Williard C. SHINER and Ruth M. Shiner

v.

Eugene P. MORIARTY (a/k/a Eugene P. Weisman) Jane E. Moriarty (a/k/a Jane E. Weisman) Nernberg & Laffey, P.C., Maurice A. Nernberg, Jr. and James R. Cooney (Two Cases).

Appeal of Eugene P. MORIARTY (a/k/a Eugene P. Weisman) and Jane E. Moriarty (a/k/a Jane E. Weisman) (at 2196).

Appeal of NERNBERG & LAFFEY, P.C., Maurice A. Nernberg, Jr., and James R Cooney (at 2299).

Superior Court of Pennsylvania.

Argued Nov. 12, 1997.

Filed Jan. 12, 1998.

Reargument Denied March 19, 1998.

---

1. See, *Commonwealth v. Oglialoro*, 525 Pa. 250, 579 A.2d 1288 (1990), and *Commonwealth v. Johnston*, 515 Pa. 454, 530 A.2d 74 (1987).

Kevin C. Harkins, Pittsburgh, for Eugene P. Moriarty and Jane E. Moriarty.

William G. Walker, Tuscon, AZ, for Willard C. and Ruth M. Shiner.

Robert L. Potter and Dennis J. Roman, Pittsburgh, for Nernberg & Laffey, P.C., Maurice A. Nernberg, Jr. and James R. Cooney.

Before JOHNSON, EAKIN and BROSKY, JJ.

JOHNSON, Judge:

Eugene P. and Jane E. Moriarty appeal from the order that denied their motions for judgments notwithstanding the verdict and for a new trial. Jane Moriarty also appeals from that portion of the order that denied her request for a remittur. Maurice A. Nernberg, Jr., James R. Cooney, and Nernberg & Laffey, P.C. ("attorney defendants") appeal from the portion of the same order that denied their motions for post-trial relief. These appeals are consolidated for our review.

This action is a later installment of the continuing legal saga involving the Moriartys (formerly named the Weismans) and the appellees, Willard C. and Ruth M. Shiner. The conflict between these parties has its genesis in a restaurant business run by Encore, Inc. A brief synopsis of the parties' dealings is in order.

The Shiners owned a restaurant called Encore in a building they owned on Walnut Street in Pittsburgh. In 1981, the business was reorganized with Eugene Moriarty becoming half-owner of a new corporation called Encore Associates, Inc. ("Encore"). This new corporation engaged in an extensive expansion of the prior restaurant enterprise at a cost of over $750,000. $600,000 of this cost was procured through a loan from the Allegheny County Industrial Development Authority (IDA), which was personally guaranteed by the Shiners and the Moriartys. The Shiners, as owners of the building, granted a new lease to Encore for a term of six years commencing on October 1, 1981, and ending September 30, 1987. The lease contained two renewal options for additional five year terms. The lease provided for the exercise of these options with the following language: "Said option shall be exercisable by written notice from Tenant to Landlord by certified mail ... at least six (6) months prior to the expiration of the original term or the renewal term." Lease, ¶ 2, attached as Exhibit A to Shiners' Complaint, docketed Dec. 3, 1990. Encore's restaurant opened for business in late 1982 under the name "Brendan's."

In January 1985, the parties completed a negotiated buyout by the Moriartys of the Shiners' 50% ownership of Encore. Under this agreement, the Shiners received $105,000 and an agreement that the Moriartys would indemnify the Shiners for any personal liability on the IDA loan. The Shiners retained ownership of the building and no new lease was executed.

On April 21, 1987, Encore mailed the Shiners notice of its intent to renew the lease. By the above-quoted lease term, this notice was due twenty-one days earlier on March 31, 1987. The Shiners advised Encore that the option was no longer available and that it was required to vacate the premises by September 30, 1987. On July 31, 1987, Encore and the Moriartys filed a complaint in equity

through its counsel, the firm of Brennan, Robins & Daley.

The equity complaint sought a preliminary and permanent injunction against the Shiners' termination of the lease and interference with Encore's possession of the premises, as well as monetary relief. The complaint alleged a lack of notice of an obligation to comply with the requirement of timely, written notice to exercise the option. An evidentiary hearing was held on September 29, 1987, before the Honorable Eugene B. Strassburger, III, who denied the request for a preliminary injunction. Judge Strassburger concluded, among other things, that the failure to renew the lease in a timely manner was a result of Encore's own negligence. Opinion of Strassburger, J., at GD 87–13537, dated October 15, 1987, at 6. Encore and the Moriartys appealed this order to the Superior Court on October 6, 1987. The trial court denied their motion for a supersedeas the following day. They subsequently requested a stay pending appeal from the Superior and Supreme Courts. This relief was denied by the Superior Court, but Justice Stephen Zappala of the Supreme Court granted a stay by an order dated October 15, 1987. On October 21, 1987, the Supreme Court rescinded the stay because of the filing of a petition in bankruptcy by Encore the day before its entry, which automatically stayed prospective legal action.

On October 5, 1987, the Shiners filed an ejectment action against Encore and confessed judgment against it pursuant to a warrant of attorney contained in the lease. A writ of execution was served the following day. Encore then filed a Petition to Open Judgment Confessed in Ejectment, relying on the same grounds as their request for an injunction in the equity complaint. The Honorable I. Martin Wekselman dismissed the petition on October 13, 1987, without requiring an answer by the Shiners. Judge Wekselman cited the lack of a showing of a colorable defense, as required to open a confessed judgment, stating that the reasoning of Judge Strassburger in his previous denial of the preliminary injunction was persuasive in determining that Encore's defense lacked merit. Opinion of Wekselman, J., at GD 87–17492, dated October 30, 1987. Encore appealed this order on October 29, 1987.

As previously indicated, Encore filed a voluntary petition in bankruptcy on October 14, 1987, triggering an automatic stay of all legal process against it. On October 22, 1987, the Shiners filed a motion seeking relief from the stay, which was opposed by Encore. United States Bankruptcy Judge Bernard Markovitz granted the Shiners relief by the order dated November 24, 1987.

The attorney defendants commenced their representation of the Moriartys and Encore on December 1, 1987.

On December 3, 1987, the attorney defendants applied to the Supreme Court for a reinstatement of its previous order granting a stay pending appeal in the equity action. The Supreme Court denied this application. Then the attorney defendants filed an application for reconsideration by the full court that was denied on December 21, 1987.

On December 9, 1987, the Moriartys and Encore filed a motion to amend their equity complaint. Judge Strassburger granted this motion, in part, allowing them to allege that the time restriction was not a condition to the exercise of the option, but rather, Encore retained the power to exercise the option during the entire lease term provided it was not in default. Contemporaneously, they renewed the request for a preliminary injunction and sought a hearing on the allegations contained in the amendment. The motion also repeated the request for a stay pending the appeal of Judge Strassburger's September 30, 1987, order. Judge Strassburger denied the latter requests. This order was appealed to the Superior Court the same day. Judge Strassburger's entire opinion, prepared pursuant to Pa.R.A.P.1925 read:

> The relief sought herein was denied three times by this judge, once by Judge Wekselman of this court, twice by the Superior Court, twice by the Supreme Court and once by the Bankruptcy Court. Litigation must end at some point. It is suggested that the Superior Court impose counsel fees upon Appellants and/or their counsel.

Opinion of Strassburger, J., at GD 87–13537, dated December 10, 1987. On December 10, 1987, the Superior Court granted a stay

pending appeal, but vacated the order the following day.

On December 7, 1987, Encore, through the attorney defendants, filed a petition to strike the confessed judgment in ejectment. This petition alleged that the confessed judgment, entered after the expiration of the lease, was invalid because Encore was then a holdover tenant and the lease and the warrant of attorney contained therein were no longer operative. The Honorable Ralph H. Smith, Jr., denied the petition stating that it was procedurally improper under Pa.R.A.P. 1701, which deprived the court of jurisdiction over the judgment by virtue of the prior appeal of Judge Wekselman's denial of the petition to open the same judgment. Judge Smith elaborated that the petition was meritless because the Encore's position would render the warrant for confession of judgment of possession virtually meaningless. Opinion of Ralph H. Smith, Jr., J., at GD 87–17492, dated December 15, 1987. This order was also appealed to the Superior Court. The trial court denied Encore's request for a supersedeas on December 16, 1987. The Superior Court granted a stay the following day but vacated the stay on December 18, 1987. Encore left the premises the following day. The Superior Court affirmed the orders of Judges Strassburger, Wekselman and Smith in a single Memorandum filed October 28, 1988.

Meanwhile, on December 9, 1987, Encore appealed the Bankruptcy Court's lifting of the stay. On the same day, a request to the Bankruptcy Court to stay the lifting of the stay was made and denied. The following day, Encore filed a motion for leave to assume or reaffirm the lease. The bankruptcy court denied this request on January 5, 1988. The Honorable Gustave Diamond of the United States District Court for the Western District of Pennsylvania denied a stay pending appeal, citing the expiration of the lease and Judge Strassburger's previous admonition as to the need for an end to litigation. Memorandum Order of Diamond, J., dated December 14, 1987, at 3. The Third Circuit denied the appeal.

In March 1988, Victoria's Secret, Inc., the Shiners' new tenant on the first floor of the Walnut Street property, applied to the Pittsburgh Zoning Board for an occupancy permit. The attorney defendants appeared on behalf of Encore to oppose the permit. The permit was granted and Encore appealed to the court of common pleas. Judge Wekselman rejected the appeal, stating, "It is plain to the Court that if Encore's appeals are not completely frivolous and a gross abuse of the system, they are not far removed from such characterizations." Opinion of Wekselman, J., dated January 3, 1989, at 2. Subsequently, the Shiners' new second floor tenant applied to the Pennsylvania Liquor Control Board for a liquor license. Encore petitioned to intervene, on July 8, 1988. The petition was denied and the license granted on July 29, 1988.

After failing in these latest attempts to prevent the leasing of its former premises, Encore filed a motion to have its equity complaint transferred to the law side of the court, which was granted on January 6, 1989. Finally, on August 30, 1993, the Honorable Livingstone Johnson granted the Shiners' motion for summary judgment. Judge Johnson held that the action, which was now one for wrongful eviction, could not be maintained. He explained:

> Plaintiff's position is specious in the extreme, willfully ignoring the rationale of the Superior Court's holding and contorting the law in a fashion wholly inconsistent with responsible advocacy. The Superior Court's memorandum is thoroughly and abundantly clear that there existed no colorable defense to Defendants' confession of judgment and, by logical extension, no basis upon which eviction should not proceed.

\* \* \*

> Thus, notwithstanding the demonstrated inability of Plaintiffs and their counsel to accept an adverse decision, this litigation can proceed no further.

Opinion of Johnson, J., at GD 87–13537, dated December 22, 1993, at 3–4.

The Shiners filed this action against the Moriartys and their counsel, Nernberg & Laffey, P.C., and its attorneys Maurice Nernberg and James Cooney. The original complaint contained six counts, but was reduced to three by various pre-trial rulings.

The first claim was for wrongful use of civil proceedings challenging the Moriartys' and the attorney defendants' several attempts to continue the stay in bankruptcy. The second count, abuse of process, challenged the Moriartys' and the attorney defendants', conduct in the equity and ejectment actions filed in the court of common pleas. The final count charged the Moriartys and the attorney defendants with intentional interference with contractual relations based on their conduct in opposing the occupancy permit and liquor license to the Shiners' new tenants and for threatening to sue the Allegheny County Sheriff if he proceeded to evict Encore.

These claims were tried before a jury, which returned verdicts in favor of the Shiners on all counts. The jury assessed damages of $300,000 for emotional distress, $40,000 for attorneys' fees, and $21,000 in lost rent. Liability for these damages were apportioned as follows: $102,500 to each of the Moriartys; $90,000 to Maurice Nernberg; $15,000 to James Cooney; and $15,000 to the firm of Nernberg & Laffey, P.C. The jury also assessed punitive damages of $1,000,000 to each of the Moriartys, $750,000 to Maurice Nernberg, and $250,000 to Nernberg & Laffey. Punitive damages were not imposed on James Cooney. The Moriartys and the attorney defendants made several post-trial motions, which the trial court denied. This appeal followed.

The Moriartys and the attorney defendants appeal separately. In their appeal, docketed at No. 2196 PGH 1996, the Moriartys assign several errors to the trial court. First, Jane Moriarty argues the evidence was insufficient to support an award of punitive damages against her and judgment n.o.v. should have been granted in her favor on this issue. Next, the Moriartys argue that judgment n.o.v. should have been granted on the abuse of process claim because the Shiners only attempted to prove a lack of probable cause, which is irrelevant to liability for this tort. The Moriartys also argue that the wrongful use claim should not have been presented to the jury since it was based entirely on their actions in bankruptcy court and is completely pre-empted by the federal Bankruptcy Code. Alternatively, they challenge the sufficiency of the evidence respecting this claim.

The attorney defendants assign multiple errors to the trial court as well. First, they largely reiterate the Moriartys' claims regarding the merits of each substantive claim. Also, the attorney defendants argue that no "process" was employed by the attorney defendants in the equity and ejectment actions, no evidence indicated an abuse of that process under Pennsylvania law, and they argue that their conduct before the zoning board and liquor control board was privileged. Further, they contend that judgment n.o.v. was required as to the Shiners' emotional distress claims because they failed to support them with medical testimony. They argue that the court erred in not granting a new trial based on the erroneous admission of several judicial opinions elaborating the reasoning behind the decisions rendered on the various legal filings by Encore and the Moriartys. They argue that the opinions were irrelevant, were inadmissible hearsay, and were unduly prejudicial in light of their limited probative value. Finally, the attorney defendants argue that the jury was improperly charged on punitive damages, and that the award deprived them of substantive due process due to their lack of a reasonable relation to their wealth and to the amount of compensatory damages.

■ We first address the attorney defendants' claim that the trial court erred in denying their motion for a new trial. They assert that the court erroneously permitted the judicial opinions authored by various judges presiding over the several proceedings that form the basis of this suit to be read in court. They argue that these opinions were irrelevant, were hearsay not subject to any recognized exception, and they were unduly prejudicial. For the reasons that follow we affirm the trial court's decision to permit the text of the opinions to be read to the jury.

■ Our standard of review in reviewing the denial of a motion for a new trial is to determine whether the trial court committed an abuse of discretion or an error of law which controlled the outcome of the case. *Somerset Community Hosp. v. Allan B. Mitchell & Assoc.*, 454 Pa.Super. 188, 685 A.2d 141, 146 (1996).

Questions concerning the admissibility of evidence at trial are within the trial judge's sound discretion, and we will not reverse his decision absent an abuse of that discretion. *Engle v. West Penn Power Co.*, 409 Pa.Super. 462, 481, 598 A.2d 290, 299 (1991), *allocatur denied*, 529 Pa. 669, 605 A.2d 334 (1992). Generally, a trial judge should admit all relevant evidence unless a specific rule bars its admission. *Id.* Evidence is relevant if it "tends to make the fact at issue more or less probable or intelligible or to show the origin and history of the transaction between the parties and explain its character." *Id.* at 482, 598 A.2d at 299–300 (citations omitted).

*Valentine v. Acme Markets, Inc.*, 455 Pa.Super. 256, 687 A.2d 1157, 1160 (1997).

We agree with the trial court that the opinions were relevant to establish the motive and intent of the Moriartys and their attorneys in proceeding in the face of the statements of the various judges denigrating the merits of their position. Their use in this fashion does not constitute hearsay because their relevance does not depend upon the truth of the various judges' opinions of the merits of the issues considered.

■ Moreover, the fact that the jury could have used the opinions as evidence that the Moriartys' position was, in fact, specious, or that their continued litigation was abusive does not convince us that the trial court abused its discretion in determining that they were not unduly prejudicial. Relevant evidence should be excluded if its probative worth is substantially outweighed by the danger of undue prejudice. *Whistler Sportswear, Inc. v. Rullo*, 289 Pa.Super. 230, 433 A.2d 40, 47 (1981). The subjective motivation for continuing each avenue of litigation in the face of repeated setbacks was a crucial determination in assessing liability. The judicial responses to the varied legal filings and the subsequent actions of the defendants were highly probative of their motives. The Shiners utilized these opinions by presenting expert testimony regarding the manner in which an attorney would interpret these opinions and the reasonableness of the course pursued once the judges' views were communicated. While the history of the business dealings between the parties suggests a motive for the Moriartys to exact revenge upon the Shiners, the expert testimony was the strongest evidence of the attorney defendants' indulgence of that motive through a multiplicity of vexatious legal maneuvers.

Conversely, there is a manifest possibility that the jury could have decided the case in the Shiners' favor based upon the indications by the judges that they considered the underlying litigation to be repetitive and without legal foundation. We cannot say, however, in light of the centrality of the relevant and proper consideration of these opinions to the Shiners' claims against the attorney defendants, that the trial court erred in not determining that the danger of the otherwise impermissible use of these opinions substantially outweighed their probative value. Accordingly, we affirm the trial court's denial of a new trial on the basis of the admission of this evidence.

■ The Moriartys and the attorney defendants argue that the trial court erred in denying judgment n.o.v. on the abuse of process claim because the Shiners did not allege or prove that they conducted the equity action or petitioned separately to open and strike the confessed judgment for an ulterior purpose or perverted these proceedings to accomplish ends for which they were not intended. They maintain that probable cause is immaterial to an abuse of process claim and that the trial court's assertion that a lack of probable cause can support an inference of an ulterior purpose is legally incorrect. The trial court found that the allegation that these persons acted solely to harass the Shiners was sufficient and that the evidence was sufficient to support a jury finding that the Moriartys and the attorney defendants acted with this purpose. Opinion, dated May 21, 1997, at 13.

In reviewing a motion for judgment n.o.v., this Court must consider the evidence in the light most favorable to the verdict winner, resolving every factual conflict consistent with the verdict and affording him the benefit of any reasonable inference to be drawn from the evidence. *Simmons v. Pacor, Inc.*, 543 Pa. 664, 672, 674 A.2d 232, 236 (1996). "There are two bases upon which a j.n.o.v. can be entered: One, the movant is entitled

to a judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant." *Id.*

■■■ "The tort of 'abuse of process' is defined as the use of legal process against another 'primarily to accomplish a purpose for which it is not designed.'" *Rosen v. American Bank of Rolla*, 426 Pa.Super. 376, 627 A.2d 190, 192 (1993)(quoting RESTATEMENT (SECOND) OF TORTS § 682). "To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Id.* This tort differs from that of wrongful use of civil proceedings in that, in the former, the existence of probable cause to employ the particular process for its intended use is immaterial. *See id.* The gravamen of abuse of process is the perversion of the particular legal process for a purpose of benefit to the defendant, which is not an authorized goal of the procedure. *Id.* In support of this claim, the Shiners must show " '[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process ...; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.'" *Di Sante v. Russ Financial Co.*, 251 Pa.Super. 184, 380 A.2d 439, 441 (1977)(quoting PROSSER, TORTS, § 100, at 669 (2d Ed.1955)).

The Moriartys and the attorney defendants argue that judgment n.o.v. should have been granted because the establishment of a lack of probable cause and the fact that they acted out of spite or with bad intentions are not sufficient to establish an abuse of process. We find that this argument mischaracterizes the Shiners' claim, and also the purpose for which the trial court found the lack of probable cause relevant to this claim. For the reasons that follow, we affirm the denial of a judgment n.o.v. on the Shiners' abuse of process claims.

The Shiners did not merely allege that the Moriartys' and the attorney defendants' intentions were impure. They alleged that the equity action, the petitions directed toward the confessed judgment, and the sundry motions to stay the execution on the leasehold during the pendency of these actions were undertaken and continued in an effort to harass and to cause them financial and emotional injury. These objectives are illegitimate in the context of any civil proceeding in Pennsylvania. *See* Pa. Rule of Professional Conduct 3.1 (Comment)(Lawyers may not proceed in a meritless action where "the client desires to have the action taken primarily for the purpose of harassing or maliciously injuring a person ...."); *see also Nienstedt v. Wetzel*, 133 Ariz. 348, 651 P.2d 876, 33 A.L.R.4th 635 (App.1982)(abuse of process claim can be based on motive of harassment). Pursuing litigation primarily to harass and cause injury to the adverse party is an objective not authorized by the equity action or the efforts to avoid the confessed judgment and constitutes a sufficient perversion of the process employed here to support a common law claim of abuse of process. *Cf. Hart v. O'Malley*, 436 Pa.Super. 151, 647 A.2d 542, 552–53 (1994), *aff'd,* 544 Pa. 315, 676 A.2d 222 (1996).

The Moriartys and the attorney defendants correctly assert that a lack of probable cause is not part of an abuse of process claim. This observation, however, cannot preclude a party from proving a lack of probable cause when it is relevant to the existence of an improper purpose. The testimony of the Shiners' expert, John Bingler, Esq., indicated that the Moriartys' claims were repeatedly raised without any expectation of success and the opinions of the various judges clearly advised both attorneys and clients that further litigation was meritless and unwarranted. The jury could properly draw an inference from this testimony that achievement of the requested relief was not the primary motivation of the Moriartys and the attorney defendants. We find the evidence presented was sufficient to permit a jury to determine that the Moriartys and the attorney defendants proceeded for a primary purpose of harassing the Shiners, and not to preserve the leasehold and avoid eviction. *See Wainauskis v. Howard Johnson Co.*, 339 Pa.Super. 266, 488 A.2d 1117, 1123 (1985)(lack of probable cause sufficient to warrant inference of malicious intent). *See*

*also Rosen, supra,* 627 A.2d at 192–93 (quoting RESTATEMENT (SECOND) OF TORTS, § 682, cmt. b. to explain significance of finding that motive of spite or ulterior purpose was primary purpose of litigation rather than a desire incidental to accomplishment of authorized relief).

■ Additionally, the attorney defendants argue that the Shiners failed to prove that any particular "process" was employed in an abusive fashion. They argue that "process" is a restrictive term, requiring a party to identify some form of coercive legal process such as a subpoena or a writ that was employed to an improper purpose. This argument is unavailing. This narrow view of the scope of this tort does not appear to be consistent with Pennsylvania law. *See McGee v. Feege,* 517 Pa. 247, 535 A.2d 1020 (1987)(rejecting precedent indicating that seizure of person or property by legal process is required for a claim of abuse of process). "The word process as used in the tort of abuse of process has been interpreted broadly, and encompasses the entire range of procedures incident to the litigation process." *Rosen, supra,* 627 A.2d at 192 (internal quotation marks and citation omitted). This expansive definition supports the finding that any or all of the petitions and motions filed on behalf of the Moriartys and Encore by the attorney defendants in the subject actions could supply the element of process as required for this tort. *See McGee, supra* (meritless petitions for stay, to open or strike judgment, and other motions found sufficient to establish abuse of process).

■ Both the Moriartys and the attorney defendants argue that the trial court erred in failing to dismiss the Shiners' wrongful use of process claim based on their conduct in the bankruptcy case and by failing to grant judgment n.o.v. as to the jury's verdict on that claim. They assert that this claim is pre-empted by the federal Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

Federal pre-emption is based on the Supremacy Clause of the United States Constitution. U.S. CONST. ART. VI, cl. 2. Congress has the undisputed power to pre-empt state law in areas of federal concern. *Pacific Gas & Electric v. Energy Resources Comm'n,* 461 U.S. 190, 203–04, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752, 765 (1983). Pre-emption can be found in the absence of an explicit federal statutory provision invalidating a particular state law. *International Paper Co. v. Ouellette,* 479 U.S. 481, 491, 107 S.Ct. 805, 811, 93 L.Ed.2d 883, 896 (1987). When the federal legislation is in an area of traditional state concern, a court should presume Congress did not intend to supersede state authority absent a "clear and manifest" legislative purpose to the contrary. *Pacific Gas & Elec., supra,* at 206, 103 S.Ct. at 1723, 75 L.Ed.2d at 766 (citation and internal quotation marks omitted). A finding of pre-emption is warranted where the federal legislation is "sufficiently comprehensive" to raise the inference that Congress "left no room for supplementary state regulation." *Int'l Paper Co., supra,* at 491, 107 S.Ct. at 811, 93 L.Ed.2d at 896 (citation and internal quotation marks omitted). "[A] state law is also invalid to the extent it actually conflicts with a federal statute." *Id.* Such a conflict occurs when the state law may interfere with the execution and attainment of congressional objectives. *Id.* at 492, 107 S.Ct. at 811, 93 L.Ed.2d at 896.

The trial court concluded that the wrongful use of process claim for damages resulting from the filing of certain papers in the U.S. Bankruptcy Court was properly brought in state court. Opinion, dated May 21, 1997, at 10–11. We must first note that the trial court has misstated the issue. The issue is not whether the trial court could exercise jurisdiction over the controversy. Rather, the issue is whether the application of state tort law to the particular issue was pre-empted by the Bankruptcy Code. The bankruptcy court's exclusive jurisdiction, if any, is derivative of exclusive application of the Bankruptcy Code to the conduct at issue. Similarly, the Shiners' response is misguided. They focus on the limited jurisdiction of bankruptcy courts in arguing that that court lacked jurisdiction over their wrongful use claim. The issue is whether a wrongful use claim exists, or is it pre-empted by the remedies available under the Bankruptcy Code. The Shiners have provided no authority indicating that the bankruptcy court was without authority to exert jurisdiction over the Moriartys or the attorney defendants for the

purpose of imposing the penalties authorized by the Bankruptcy Code.

As to the merits of the claim on appeal, the trial court relied upon *Paradise Hotel Corp. v. Bank of Nova Scotia,* 842 F.2d 47 (3d Cir.1988) and *R.L. LaRoche, Inc. v. Barnett Bank of South Florida,* 661 So.2d 855 (Fla. Dist.Ct.App.1995) for the proposition that a state court claim premised on actions taken before a bankruptcy court can be maintained. These cases stand in stark contrast to the preponderance of federal and state decisions. *See, e.g., MSR Exploration, Ltd. v. Meridian Oil, Inc.,* 74 F.3d 910 (9th Cir.1996); *Gonzales v. Parks,* 830 F.2d 1033 (9th Cir.1987); *Raymark Industries, Inc. v. Baron,* No. 96–7625, 1997 W.L 359333, 1997 U.S. Dist. LEXIS 8871 (E.D.Pa. June 23, 1997); *Koffman v. Osteoimplant Technology, Inc.,* 182 B.R. 115 (D.Md.1995); *Mason v. Smith,* 140 N.H. 696, 672 A.2d 705 (1996); *Sarno v. Thermen,* 239 Ill.App.3d 1034, 180 Ill.Dec. 889, 608 N.E.2d 11 (1992); *Idell v. Goodman,* 224 Cal.App.3d 262, 273 Cal.Rptr. 605 (1990). Further, the trial court's application of *Paradise Hotel, supra,* to this pre-emption issue is not consistent with the interpretation of at least one district court within the Third Circuit. *Raymark, supra,* at *34–36 (finding *Paradise Hotel* "inapplicable" to issue of pre-emption of state tort claim based on bankruptcy filings and "explicitly restricted to its facts").

Our examination of the case law on this point constrains us to agree with the Moriartys and the attorney defendants that the Bankruptcy Code permits no state law remedies for abuse of its provisions. The United States Court of Appeals for the Ninth Circuit has observed that the "complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code ... demonstrates Congress's intent to create a whole system under federal control" and that, although state law has a large role in many bankruptcy determinations, "the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal." *MSR Exploration, supra,* at 914. The Bankruptcy Code provides a range of remedies for misconduct before a bankruptcy court. *See Koffman, supra,* at 124–25. The Ninth Circuit has declared that "Congress' authorization of certain sanctions for the filing of frivolous bankruptcy petitions should be read as an implicit rejection of other penalties, including the kind of substantial damage awards that might be available in state court tort suits." *Gonzales, supra,* at 1036. The uniformity of bankruptcy law is a matter textually committed to Congress by the federal constitution. U.S. Const., Art. I, § 8. The insertion of state tort standards into the bankruptcy process poses significant interference with federal regulation in that area, creating a situation "where the specter of additional litigation must haunt virtually every actor in a bankruptcy proceeding." *MSR Exploration, supra,* at 916. Accordingly, we hold that the Shiners' wrongful use claim against all defendants in this case, being based upon the defendants' conduct in the bankruptcy proceedings, is pre-empted by the Bankruptcy Code. *International Paper Co., supra.* Accordingly, the verdicts in favor of the Shiners on their wrongful use of civil proceedings claims cannot stand.

■ The Moriartys and the attorney defendants contend that the trial court erred in denying their motion for judgment n.o.v. regarding the Shiners' intentional interference with contractual relations claim because such an action requires proof of actual, pecuniary injury. The defendants state that the Shiners offered only proof of emotional injury and that this is insufficient as a matter of law to support this particular tort.

■ To maintain an action for intentional interference with contractual relations one must allege: "(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of a privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct." *Pelagatti v. Cohen,* 370 Pa.Super. 422, 536 A.2d 1337, 1343 (1987). "[T]he gravamen of this tort is the lost pecuniary benefits flowing from the contract itself; other losses, such as emotional distress and loss of reputation, are consequential harms." *Id.*

We agree with the Moriartys and the attorney defendants on this issue. This case is

controlled by *Pelagatti, supra,* in which this Court held that a party that is unable to prove actual pecuniary loss flowing from an alleged interference with contract cannot proceed under that theory to recover solely for harm to business reputation as a result of the challenged conduct. *Id.* 536 A.2d at 1344. The Shiners have quoted language from this Court's decision in *Pawlowski v. Smorto,* 403 Pa.Super. 71, 588 A.2d 36 (1991), indicating that emotional damages alone are sufficient to establish the final element of this tort. *Id.* 588 A.2d at 40 (stating that damage element of tort involves "the loss of the benefits of the contract or prospective relation or consequential, emotional or reputational losses resulting from the defendant's conduct[ ]"). This statement was unnecessary to the resolution of the issues in that case, and more importantly, is inconsistent with the holding in *Pelagatti* that, though non-pecuniary harms are recoverable in an intentional interference action, such an action cannot be maintained in the absence of pecuniary loss flowing from the interference. *Pelagatti, supra,* at 1343–44. Accordingly, we reverse the trial court's denial of judgment n.o.v. on the intentional interference claim.

■ The attorney defendants contend that emotional distress damages could not be recovered on any of the Shiners' claims because the law requires such damages to be proven by expert testimony. The trial court specifically barred the presentation of any testimony besides that of the parties on this issue. Order, dated January 30, 1995. The attorney defendants address this argument to each of the Shiners' claims, claiming that no damages for emotional distress were recoverable in this action and that the trial court erred in denying their motion for j.n.o.v. due to this deficiency of proof.

■ Expert medical testimony is required to establish a claim for intentional infliction of emotional distress. *Kazatsky v. King David Memorial Park, Inc.,* 515 Pa. 183, 197, 527 A.2d 988, 995 (1987). This requirement was imposed in light of the unique elements of that tort, which involves such a problematic and nebulously defined legal right as "to defy principled adjudication." *Kazatsky, supra,* at 194–95, 527 A.2d at 993–94. This rule is applicable only to that particular tort and does not apply to the instant abuse of process and intentional interference with contractual relations claims, which do not involve those same elements. *See Krysmalski by Krysmalski v. Tarasovich,* 424 Pa.Super. 121, 622 A.2d 298 (1993)(negligent infliction of emotional distress). Accordingly, we find that expert testimony was not required, here, and affirm the award of damages for emotional distress.

■ Jane Moriarity argues that judgment n.o.v. should have been granted because the evidence was insufficient to establish that she had enough control over her husband or the defendant attorneys to support an award of punitive damages against her. She does not challenge the verdict insofar as it imposed liability on her for compensatory damages, though she admits that the two issues are identical. *See* Brief for Appellants Eugene P. Moriarty and Jane E. Moriarty, at 18 n.4. The Shiners counter with several citations to the record to support the imposition of punitive damages directly or vicariously and urge this Court to affirm the award on either basis. After a thorough review of the record and the relevant case law we are constrained to conclude that there is insufficient evidence supporting the assessment of punitive damages against Jane Moriarty and accordingly we reverse this portion of the jury's verdict.

■ "Punitive damages must be based on conduct which is malicious, wanton, reckless, willful, or oppressive." *Dean Witter Reynolds, Inc. v. Genteel,* 346 Pa.Super. 336, 499 A.2d 637, 642–43 (1985). The Shiners focus their response to Jane Moriarty's appeal of the punitive damages award on her verification of the complaint in equity that was the first salvo in the many years of litigation by her and her husband. In verifying the complaint, she admitted personal knowledge of the lease, the intent of the parties thereto, and personal harm from the loss of occupancy of the leased premises. The Shiners also allege that she received copies of the various judicial opinions that both assailed the merits of the allegations in that complaint and urged a cessation of the litigation. Further, they point to the imposition of counsel fees upon her and her payment of the attorney defendants as a basis for her liability for the

abusive litigation underlying the Shiners' claims.

The filing of the equity complaint, so heavily relied upon by the Shiners on this appeal, cannot support the imposition of punitive damages because it has never been challenged as an abuse of process or a wrongful use of civil proceedings. The Shiners have simply never shown that the filing of that complaint was wrongful. Moreover, the Shiners have mischaracterized the record in this case in straining to support their argument. There is simply no evidence of record that Jane Moriarity ever received copies of the particular judicial opinions as claimed. Nor is there any evidence that she was personally assessed counsel fees as a penalty for abusive filings or that she personally paid any portion of the legal fees to the attorney defendants.

■■■ Punitive damages may be awarded on the basis of vicarious liability. *Dean Witter Reynolds, supra,* 499 A.2d at 643. In Pennsylvania, there is no requirement that an agent commit a tortious act at the direction of his principal, nor must the principal ratify the act, in order for punitive damages to be imposed on him. *Philadelphia Traction Co. v. Orbann,* 119 Pa. 37, 43, 12 A. 816, 818 (1888). *See Dean Witter Reynolds, supra.* Not every agency relationship, however, can form the basis of vicarious liability of the principal for the acts of the agent. *Gajkowski v. International Brotherhood of Teamsters,* 350 Pa.Super. 285, 504 A.2d 840, 848 (1986), *affirmed in part and reversed in part,* 519 Pa. 320, 548 A.2d 533 (1988).

The record is certainly sufficient to establish that Eugene Moriarty acted as an agent for his wife in pursuing litigation on her behalf and on behalf of their corporation. "[A] husband habitually permitted by his wife to attend to some of her business matters may be found to have authority to transact all her business affairs." RESTATEMENT (SECOND) OF AGENCY, § 22 comment b quoted in *Tonuci v. Beegal,* 188 Pa.Super. 66, 145 A.2d 885, 888 (1958). Jane Moriarty's verification of the contents of the equity complaint does establish her personal knowledge of the existence of the litigation. Her failure to independently withdraw from the litigation at any point thereafter indicates that her husband and the attorney defendants acted on her behalf and with her authorization in repeatedly seeking to prevent the loss of the leased premises. Moreover, all of the litigation was carried on in the name of the business of which Jane Moriarty was a 50% owner. Despite her significant ownership interest, the record reflects that Eugene Moriarty was responsible for arranging the formation of the corporation, the lease, the subsequent buyout of the Shiners, and even both Moriartys' personal guarantees of the IDA loan.

■■■ The principle expressed above has been cited to support a spouse's liability on a contract entered into by the other spouse. *See, e.g., Yezbak v. Croce,* 370 Pa. 263, 88 A.2d 80 (1952); *Frank v. Peckich,* 257 Pa.Super. 561, 391 A.2d 624 (1978); *Tonuci, supra.* To establish tort liability, however, a plaintiff must show the agent was subject to the principal's control over the details of his performance of the task for which he was appointed. *See Smalich v. Westfall,* 440 Pa. 409, 269 A.2d 476 (1970)(explaining that only degree of control involved in master-servant relationship, a subspecies of agency, is sufficient to establish vicarious tort liability). The record in this case demonstrates that Eugene Moriarty engaged in the objectionable portions of this litigation unilaterally, through attorneys of his employ, and in the exercise of his own independent judgment. No evidence was presented which demonstrates that Jane Moriarty retained the ability, if she chose, to direct the details of the litigation. The fact that she could have withdrawn the authority to act in her behalf is of no moment as this is an attribute of every agency relationship. Accordingly, Jane Moriarty should have been granted a judgment n.o.v. as to the award of punitive damages. *See id.*

■■■ Maurice Nernberg and his law firm, Nernberg & Laffey, P.C., argue that the trial court erred in denying them judgment n.o.v. and a new trial on the issue of punitive damages. They claim that the respective jury verdicts were violative of their substantive due process rights because the awards are not reasonably related to the compensatory damages or their wealth and

because the trial court improperly instructed the jury on the issue of punitive damages. The Due Process Clause of the Fourteenth Amendment protects a tortfeasor from the imposition of a "grossly excessive" punitive damages award. *BMW of North America Inc. v. Gore,* 517 U.S. 559, 560–61, 116 S.Ct. 1589, 1592, 134 L.Ed.2d 809, 818 (1996). The size of a punitive damages award must be reasonably related to the State's interest in punishing and deterring the particular behavior of the defendant and not the product of arbitrariness or unfettered discretion. *Id.* at 567–68, 116 S.Ct. at 1595, 134 L.Ed.2d at 822. "Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose." *Id.* at 573–75, 116 S.Ct. at 1598, 134 L.Ed.2d at 826. The U.S. Supreme Court has erected three "guideposts" to guide a court in reviewing the propriety of a punitive damages award. These are the degree of reprehensibility of the defendant's conduct, the ratio of punitive damages to the actual or potential harm inherent in that conduct, and the existing civil and criminal penalties for similar conduct. *Id.* at 573–82, 116 S.Ct. at 1598–1603, 134 L.Ed.2d at 826–33.

■ The degree of reprehensibility is the primary indicator of the reasonableness of a punitive damages award. *Id.* at 575–77, 116 S.Ct. at 1599, 134 L.Ed.2d at 826. This consideration is made with due regard for the fact that "some wrongs are more blameworthy than others." *Id.* In assessing the behavior of the attorney defendants we must accept the facts as found by the jury. Here, while the record does not reflect that attorney Nernberg employed any device not permitted by the rules of civil procedure, the jury found that he indulged his client's desire to wield every available legal mechanism against the Shiners without hope of success, simply to harass them and cause them to suffer emotional and financial harm. The facts show that he assisted in prolonging this design for many years and resorted to baseless efforts to interfere with the Shiners' property rights long after his client's business was irretrievably lost. The record reflects that in doing so he received significant

remuneration. The jury determined that the combined efforts of the Nernberg & Laffey attorneys caused the Shiners to suffer $120,000 in compensatory damages. The jury determined that this course of conduct was sufficiently outrageous to warrant a punitive damage award of $1,000,000 against Maurice Nernberg and his firm.

We do not hesitate to conclude that the motives and methods of Nernberg and his firm, as found by the jury, were reprehensible. The facts indicate that Nernberg and his firm acted as mercenaries in a calculated scheme of harassment, in the process abusing a right of access to publicly funded courts, abusing ethical and social obligations and squandering resources reserved for the adjudication of meritorious disputes. We are barred from concluding that Nernberg reasonably believed he was acting in the best interest of his client or in accord with his professional obligation, because such a conclusion would intrude upon the jury's determination for which there is sufficient evidentiary support. *Sprague v. Walter, supra,* at 924. Therefore this case is not controlled by the decision in *BMW, supra,* in which the defendant's conduct was consistent with a good faith belief that its policy of non-disclosure, later determined tortious, was not in violation of established law. *See BMW of North America, supra,* at 579–81, 116 S.Ct. at 1601, 134 L.Ed.2d at 829.

We are similarly unpersuaded by Nernberg's argument that the award was out of proportion with the harm caused and was excessive in light of the evidence of his financial condition. Nor are we convinced that the verdict constituted an unfair surprise in light of the reasonable expectations regarding the sanctions available for similar conduct under existing law.

The punitive damages assessed upon Nernberg and his firm were 8.3 times the amount of compensatory damages for which they were found responsible. The U.S. Supreme Court has repeatedly stressed that no bright line rule exists for determining whether such a disproportion is of constitutional magnitude. *TXO Production v. Alliance Resources,* 509 U.S. 443, 458, 113 S.Ct. 2711, 2720, 125 L.Ed.2d 366, 379 (1993)(plurali-

ty)(upholding award of $10 million in punitive damages upon verdict of $19,000 in compensatory damages); *Pacific Mutual Life Ins. Co. v. Haslip,* 499 U.S. 1, 18, 111 S.Ct. 1032, 1043, 113 L.Ed.2d 1, 18 (1991). The review of such awards remains a case by case determination. In this case, we do not find that the award was more than was necessary to punish Nernberg and his firm and to ensure that they do not repeat such behavior. Moreover, we reject the suggestion that evidence of net worth is mandatory, indeed the Supreme Court has indicated that such evidence creates a significant potential for the jury to render its award on an impermissible basis. *See TXO Production, supra,* at 464, 113 S.Ct. at 2723, 125 L.Ed.2d at 383. To the extent that it is relevant, we find that the introduction of the tax returns of Nernberg and his firm provided the jury a sufficient basis to determine the amount of punitive damages appropriate to these defendants' means. Moreover, we are unpersuaded that this attorney and his firm were unaware of the potential tort liability for abusing the legal process or that this award was beyond the conceivable bounds of a jury's discretion in imposing punitive damages.

Nernberg's final challenge is that the jury was improperly instructed on the issue of punitive damages because they were not told that the amount awarded should bear a reasonable relationship to the potential harm posed by the attorneys' conduct. This argument is unavailing. We find that the relationship of actual harm to punitive damages is not so disproportionate as to shock this Court's "constitutional sensibilities." *See TXO Production, supra,* at 462, 113 S.Ct. at 2722, 125 L.Ed.2d at 382 (finding that punitive damages ten times greater than potential harm did not offend principles of due process). Therefore it is of no moment whether this jury was instructed to limit its award by some estimate of potential damages.

■■■■ The relevance of actual or potential damages to punitive damages is tenuous as such an award is not intended to compensate, but to punish and deter. *Sprague v. Walter,* 441 Pa.Super. 1, 656 A.2d 890, 925 (1995). We find that the jury was adequately instructed to render an award consistent with the purposes of deterrence and retribution

and did not proceed with unfettered discretion. *Pacific Mutual Life Ins., supra,* at 23–24, 111 S.Ct. at 1046, 113 L.Ed.2d at 23. The amount fixed by the jury is not so extreme as to warrant a determination that it was a product of arbitrariness, passion, or bias. Therefore we reject the argument that it violated the defendants' substantive due process rights.

The punitive damage award cannot stand, however, and a new trial on the issue of damages is required in light of our disposition of the Moriartys' and the attorney defendants' arguments concerning the wrongful use of civil proceedings and intentional interference with contractual relations claims. The Shiners' three theories of recovery provided no overlap of actions justifying liability under each theory. The damages in this case were based on the cumulative effect of the various actions of the defendants. As we have decided, judgment n.o.v. should have been granted on the intentional interference and wrongful use of civil proceedings claims. It follows that the jury was without power to assess damages based on the Moriartys' and the attorney defendants' conduct in the bankruptcy, zoning and liquor control board proceedings because these actions were not a basis for liability on the sole remaining theory, abuse of process. The damages were assessed without regard to each specific cause of action. It is impossible to determine what portion of those damages was attributable to the equity and ejectment proceedings upon which liability was found for abuse of process. We find that a new trial on the issue of damages is warranted in these circumstances. *Smith v. Renaut,* 387 Pa.Super. 299, 564 A.2d 188, 193 (1989). *Cf. Connelly Containers v. Pennsylvania Railroad,* 222 Pa.Super. 7, 292 A.2d 528 (1972)(invalidity of one of two theories upon which plaintiff sought to recover for single, indivisible harm did not require new trial).

We reject, however, the argument that a new trial is necessary because the evidence concerning the Moriartys' and the attorney defendants' conduct before the Bankruptcy Court, the Pittsburgh Zoning Board and the Pennsylvania Liquor Control Board should not have been admitted to support the re-

maining claims. A new trial should be held where a verdict may have been rendered on the basis of inadmissible evidence. *Wilkes–Barre Iron v. Pargas of Wilkes-Barre,* 348 Pa.Super. 285, 502 A.2d 210 (1985). A new trial on the issues of liability is not warranted on these grounds, however, because the Moriartys and the attorney defendants have not demonstrated that the evidence of their actions in Bankruptcy Court, before the Zoning Board, and before the Liquor Control Board is rendered inadmissible by virtue of the unavailability of the tort claims based thereon. The defendants' actions in these proceedings, and their basis therefor, remain relevant to the defendants' motives in continuing their other legal efforts for the ostensible purpose of preserving Encore's leasehold. Proof relating to the defendants' actions in the bankruptcy, zoning, and liquor control proceedings may still be admitted as evidence of the Moriartys' and the attorney defendants' state of mind even if no damages can be awarded for the consequences of those actions. *See General Equipment Manufacturers v. Westfield Ins. Co.,* 430 Pa.Super. 526, 635 A.2d 173, 185 (1993)(stating that evidence of similar acts is generally inadmissible to prove liability but an exception exists where knowledge or intent is a material fact). Therefore, the liability issues resolved in the trial court do not need to be revisited on the basis of the admission of this evidence.

Accordingly, as to the Moriartys' appeal, docketed at No. 2196 Pittsburgh 1996, we *AFFIRM* that portion of the trial court's order that denied judgment n.o.v. on the Shiner's abuse of process claims; we *REVERSE* the denial of judgment n.o.v. on the Shiner's wrongful use of civil proceedings claim and their intentional interference with contractual relations claim; and we *REVERSE* that portion of the denial of judgment n.o.v. as relates to the assessment of punitive damages against Jane Moriarity. In all other respects, the order of the trial court is *AFFIRMED* and this case is *REMANDED* for a *NEW TRIAL* on the issue of compensatory damages as to both Moriartys and on the issue of punitive damages as to Eugene Moriarity, but not his wife, Jane.

As to the attorney defendants' appeal, docketed at No. 2299 Pittsburgh, 1996, we

*REVERSE* the denial of judgment n.o.v. on both the wrongful use of civil proceedings claim and the intentional interference with contractual relations claim; we *AFFIRM* the denial of judgment n.o.v. as to the Shiner's claims for emotional distress and for abuse of process, and the denial of the motion for a new trial. The case is *REMANDED* for a *NEW TRIAL* on the issue of compensatory and punitive damages.

**REVERSED** in part; **AFFIRMED** in part; **REMANDED** for a **NEW TRIAL** on **DAMAGES.** Jurisdiction **RELINQUISHED.**