**David VANCE and Keara
Vance, Husband and
Wife, Appellees**

v.

**46 AND 2, INC., d/b/a Casey's
Draft House, Appellant.**

**David Vance and Keara Vance,
Husband and Wife,
Appellees**

v.

**Nicholas Turos and Mark Welshonse,
Appellants.**

Superior Court of Pennsylvania.

Argued Dec. 6, 2006.
Filed March 13, 2007.

Stephen J. Laidhold, Pittsburgh, for appellants.

Patrick M. Connelly, Pittsburgh, for appellees.

BEFORE: MUSMANNO, BENDER and POPOVICH, JJ.

OPINION BY BENDER, J.:

¶ 1 The corporate defendant in this case, 46 and 2, Inc., d/b/a Casey's Draft House, which is a bar in Pittsburgh (hereinafter "Casey's"), and the individual defendants, Nicholas Turos and Mark Welshonse, who were both employed by Casey's as doormen/bouncers,[1] appeal from the June 20, 2006 order entering judgment on the jury verdict in favor of the individual plaintiffs, David Vance and his spouse, Keara Vance. Essentially, the Vances sought compensatory and punitive damages for injuries that David Vance sustained in a fight with Turos and Welshonse while attempting to gain admittance to the bar on his birthday. The jury awarded the Vances both compensatory and punitive damages. The defendants' sole issue on appeal is that the trial court erred by denying their motion for nonsuit or judgment notwithstanding the verdict (JNOV) on the punitive damages issue, where the plaintiffs failed to present any evidence of the defendants'

finances or wealth at trial. We conclude initially that evidence of a tortfeasor's finances or wealth is not a necessary prerequisite to the imposition of punitive damages. Accordingly, we affirm.

¶ 2 The trial court set forth the following summary of the facts in this case:

It is undisputed that [David] Vance along with co-workers, and friends, on the evening of April 22, 2004, at about 6:30 P.M., went to a restaurant in Station Square, Pittsburgh, for a dinner, and to celebrate David Vance's birthday. Vance and his friends were all co-workers at a computer assisted credit collection agency. After dinner, they went to other taverns on the South Side to continue the festivities. At about 10:00 P.M., they were joined by two other co-workers (Angela and Virginia) who had worked until about 9:00 P.M. These two were roommates and lived in an apartment on Carson Street on the South Side of Pittsburgh, on the corner of 18th Street and Carson. They returned home to "freshen up" before they joined the party.

They spent some time in an establishment known as "Fat Heads" and then left to go next door to Casey's. The established time was around midnight. There were 6 people in the party, 3 men and 3 women. As they approached Casey's, the doormen, Turos and Welshonse, asked for proof of age of the six. The 3 women provided Pennsylvania Driver Licenses, and were admitted, and one of the men had a North Ireland Driver License, and was also admitted. Vance did not have [a] Pennsylvania Driver License, or an LCB proof of age or his passports.

Vance, did however, have a U.S. Department of Justice Immigration and

---

1. We will refer to Casey's, Turos, and Welshonse collectively as "the defendants."

Naturalization Service Identification, including his photograph and his date of birth, which showed him to be of an appropriate age to enter a drinking establishment.

The two doormen told Vance he could not enter with his party because the Immigration Card was considered invalid or illegal by them. Vance disagreed with this conclusion, and an argument ensued.

From this point, the facts were hotly disputed, but the jury resolved the same in Vance's favor, and rendered the above verdict. One of the Vance party, being Angela, was standing just inside the entrance to the bar, and heard the argument going on. She testified that she saw Turos punch Vance in the jaw knocking him to the ground. Vance, himself, testified that as the argument ensued, Turos began to "eyeball" him, and the next thing Vance knew was that he was on the ground being kicked and punched. His testimony was that Turos and Welshonse were the cause of his being hit and kicked "because there was no one else in the vicinity" who could have done so.

Vance sought medical treatment on the next day for a broken jaw, a lost tooth, and other contusions from the blows received. He was subsequently treated for his injuries, and his medical costs were $8,031, which were received in evidence. There was also no question that the broken jaw was a result of the beating.

Trial Court Opinion, 6/20/06, at 5–7.

¶ 3 The Vances commenced this action on July 7, 2004 by filing a praecipe for writ of summons, followed by the filing of a complaint on December 30, 2004, and an amended complaint on January 3, 2005, against Casey's, in which they raised claims of, *inter alia*, negligence and sought punitive damages. Contemporaneously, the Vances had also filed a separate suit against the two defendant employees, Turos and Welshonse, in which they raised claims of negligence and assault and battery, also seeking punitive damages. The trial court consolidated the two cases on July 26, 2005.

¶ 4 The case proceeded to trial, and a jury returned a verdict in the Vances' favor on January 25, 2006. In particular, the jury awarded David Vance $18,032.15 in compensatory damages jointly and severally against each defendant, the jury awarded Keara Vance $2,000 for loss of consortium, and the jury awarded David Vance punitive damages as follows: $25,000 against Casey's; $8,000 against Turos; and, $4,000 from defendant Welshonse.

¶ 5 The defendants filed a post trial motion on February 3, 2006, in which they claimed that the trial court erred by refusing their motion for nonsuit (which they presented following closing arguments, but prior to the jury charge) on the punitive damages claim, and that the trial court should grant JNOV in their favor on the punitive damages claim. In their post-trial motion, as in this appeal, the defendants argued that the Vances' failure to present evidence of the defendants' finances or wealth precluded imposition of a punitive damages award. In the meantime, on June 6, 2006, the Vances caused judgment on the jury's verdict to be entered on the docket.

¶ 6 Thereafter, by an order and opinion dated June 13, 2006, and docketed on June 20, 2006, the trial court denied the defendants' motion for post trial relief and confirmed the jury verdict. The defendants filed a notice of appeal on June 29,

$2006.^2$

¶ 7 The defendants set forth the following issues in the "Statement of Questions Involved" portion of their appellate brief:

1. Consistent with Pennsylvania's adoption of § 908 of the Restatement (Second) of Torts, is evidence of a tortfeasor's wealth necessary to be provided to the trier of fact as a condition precedent to the entitlement to an award of punitive damages?

2. Where no cogent evidence of a tortfeasor's wealth appears as of record should the trial court sustain exceptions to the jury's being charged on punitive damages?

3. Where no cogent evidence of a tortfeasor's wealth appears as of record should the trial court grant motions for a non-suit and for judgment notwithstanding the verdict with regard to the punitive damage claims?

4. Does the Trial Record contain sufficient evidence of any of the tortfeasor's wealth necessary to have sustained a punitive damage award?

Defendants/Appellants' brief at 4 (trial court "answers" omitted).

¶ 8 First, the defendants contend that the trial court erred by denying their motions for nonsuit and JNOV in which they sought to reverse the award of punitive damages on the basis that "evidence of a tortfeasor's wealth is a prerequisite to a plaintiff's entitlement to a punitive damage award." Defendant/Appellants' brief at 11. Essentially, the defendants contend that because the Vances failed to present any evidence of the defendants' wealth to the jury, the jury could not impose punitive damages. The trial court disagreed and refused to grant post trial relief to the defendants on the punitive damages issue. Since the crucial issue in this appeal presents a question of law, *i.e.*, whether evidence of a tortfeasor's wealth is a necessary prerequisite to the imposition of punitive damages, our scope of review is plenary. *Shamnoski v. PG Energy, Div. of Southern Union Co.*, 579 Pa. 652, 858 A.2d 589, 593 (2004).[3]

---

**2.** In their notice of appeal, the defendants state that they are appealing both from the June 6, 2006 judgment and the order dated June 13, 2006 (and docketed on June 20, 2006), the latter of which denied their motion for post trial relief and "confirmed" the jury's verdict. It is well-settled that "[a]n appeal from an order denying post-trial motions is interlocutory." *Mackall v. Fleegle*, 801 A.2d 577, 580 (Pa.Super.2002); Pa.R.A.P. 301. Moreover, "[a]n appeal to this Court can only lie from judgments entered subsequent to the trial court's disposition of post-verdict motions, not from the order denying post-trial motions." *Mackall*, 801 A.2d at 580. In the instant case, the trial court entered one order, docketed on June 20, 2006, that first denied the defendants' post trial motions and then "confirmed" or, in our opinion, effectuated re-entry of the judgment on the docket. Accordingly, because the June 20th order entered judgment following denial of post trial motions, the defendants' appeal is properly taken from that order. We have revised the caption accordingly, and we further note that the appeal was taken timely, *i.e.*, with 30 days, of the June 20th order entering judgment. Pa.R.A.P. 903(a).

**3.** Additionally, we note that, with regard to the court's refusal to grant the defendants' motion for JNOV, our standard of review is

whether, when reading the record in the light most favorable to the verdict winner and granting that party every favorable inference therefrom, there was sufficient competent evidence to sustain the verdict. Questions of credibility and conflicts in the evidence are for the trial court to resolve and the reviewing court should not reweigh the evidence. Absent an abuse of discretion, the trial court's determination will not be disturbed.

*Atwell v. Beckwith Mach. Co.*, 872 A.2d 1216, 1222 (Pa.Super.2005) (citation omitted). Similarly, a nonsuit is proper only when, viewing all of the evidence in the plaintiff's favor, the factfinder cannot reasonably con-

¶ 9 In support of their position, the defendants point to section 908(2) of the Restatement (Second) of Torts, which reads as follows:

(2) Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant.

RESTATEMENT (SECOND) OF TORTS § 908(2) (1979). The defendants argue that our Supreme Court's subsequent decision in *Kirkbride v. Lisbon Contractors, Inc.,* 521 Pa. 97, 555 A.2d 800 (1989), in which the Court revisited section 908, requires that the jury be presented with evidence of a tortfeasor's wealth before they can impose punitive damages. We disagree with the defendants' interpretation of both section 908 and the *Kirkbride* decision.

¶ 10 In *Kirkbride,* our Supreme Court rejected the idea that an award of punitive damages had to be proportional to, or bear a reasonable relationship to, an award of compensatory damages. Rather, the Court concluded that, in determining an appropriate punitive damage award, it is the jury's province to assess the factors outlined in section 908(2) of the Restatement (Second) of Torts, *i.e.,* (1) the character of the act; (2) the nature and extent of the harm; and (3) the wealth of the defendant. Accordingly, the wealth of the defendant is a proper consideration in the jury's determination of the *amount* of punitive damages to award, not in the jury's determination of whether or not to impose punitive damages in the first place.

¶ 11 Wealth is considered in the assessment of the amount of punitive damages because "if a wealthy person commits a rather heinous act, nominal punitive damages will not deter either that person or any other similarly situated person from committing a similar act." *Kirkbride,* 555 A.2d at 802. Thus, wealth of the tortfeasor is a relevant consideration in effectuating the purpose of punitive damages, *i.e.,* to punish the tortfeasor for outrageous conduct and to deter him or others from similar conduct. *Kirkbride,* 555 A.2d at 803. On this basis, the *Kirkbride* court rejected the notion that the punitive damage award had to be proportional to the compensatory damage award, which was the issue certified for appeal in that particular case. Contrary to Appellant's argument, *Kirkbride* does not stand for the proposition that a jury cannot impose punitive damages without evidence of record pertaining to the defendant tortfeasor's wealth.

¶ 12 Rather, it is well-established that the decision of whether to award punitive damages in the first place lies in the jury's determination of whether the defendant's conduct was outrageous. *See SHV Coal v. Continental Grain Co.,* 526 Pa. 489, 587 A.2d 702, 704 (1991) ("Assessment of punitive damages are proper when a person's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton or reckless conduct, and are awarded to punish that person for such conduct." (citations omitted)). In other words, "punitive damages are awarded only for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others." *Id.* at 705 (quoting *Chambers v. Montgomery,* 411 Pa. 339, 192 A.2d 355,

---

clude that all elements of a cause of action have been established. *West Philadelphia*

*Therapy Ctr. v. Erie Ins. Group,* 751 A.2d 1166, 1167 (Pa.Super.2000).

358 (1963)). Thus, for example, where a tortfeasor's mental state rises to no more than gross negligence, punitive damages are not justified. *SHV Coal,* 587 A.2d at 705 (citation omitted). *See also Hollock v. Erie Ins. Exch.,* 842 A.2d 409, 419 (Pa.Super.2004) (indicating, in case where punitive damages imposed for defendant insurer's bad faith denial of uninsured motorist benefits, that, although a finding of bad faith alone does not compel an award of punitive damages, "it does **allow** for the award without additional proof" (emphasis in original)).

¶ 13 Additionally, in *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742 (1984), our Supreme Court interpreted the first sentence of section 908(2) of the Restatement (Second) of Torts, which, as noted above, states that "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Feld,* 485 A.2d at 747. In doing so, the Court did not consider wealth as a prerequisite to imposition of punitive damages but, rather, relied on, *inter alia,* the first sentence of section 908(2) to conclude that a "court should examine the actor's conduct" when deciding whether to impose punitive damages. *Id.* at 748. *See also SHV Coal,* 587 A.2d at 705 (examining evidence of the defendant's conduct, not its wealth, to conclude that the trial court did not abuse its discretion by determining that the defendant's conduct was outrageous for purposes of imposing punitive damages).

¶ 14 In fact, we rejected the defendant's position that wealth is a necessary prerequisite in *Reading Radio, Inc. v. Fink,* 833 A.2d 199 (Pa.Super.2003), in which we stated that the "polestar for the jury's assessment of punitive damages is the outrageous conduct of the defendants, not evidence of a defendant's wealth." *Reading Radio, Inc.,* 833 A.2d at 215 (citing *Shiner*

*v. Moriarty,* 706 A.2d 1228, 1242 (Pa.Super.1998)). We even stated that "evidence of wealth is not mandatory to establish a claim for punitive damages." *Id.* (citing *Shiner,* 706 A.2d at 1241). Accordingly, a jury could base its "award of punitive damages entirely on its assessment of [the tortfeasor's] conduct." *Id. See also Viener v. Jacobs,* 834 A.2d 546, 561 (Pa.Super.2003) ("[E]vidence of personal wealth is not mandatory in the determination of punitive damages.").

¶ 15 For the foregoing reasons, we conclude that evidence of a tortfeasor's wealth is not a necessary condition precedent for imposition of an award of punitive damages. Accordingly, the remaining three issues set forth in the defendant's statement of questions in their brief are moot because they are all premised on the defendants' mistaken notion that evidence of wealth is a necessary prerequisite to an award of punitive damages.

¶ 16 Judgment affirmed.