NUMBER 13-03-135-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG 
                                                                                                                      
 
RICHARD L. FUQUA,                                                                  Appellant,

v.

THOMAS GRABER AND
HOPKINS & SUTTER,                                                                 Appellees.
                                                                                                                                       

On appeal from the 93rd District Court of Hidalgo County, Texas.
                                                                                                                      

O P I N I O N

Before Justices Hinojosa, Yañez, and Castillo
Opinion by Justice Yañez
 
          Appellant, Richard L. Fuqua, filed this malicious prosecution suit in state court
against appellees, Thomas Graber, an attorney, and Graber’s law firm, Hopkins and Sutter. 
Fuqua contends that appellees, acting on behalf of a client, Sunbelt Savings, wrongfully
filed an adversary proceeding in Fuqua’s then-pending bankruptcy case. Appellees filed
a plea to the jurisdiction, contending that because Fuqua’s claim is premised on an
adversary proceeding in a bankruptcy case, it is preempted by federal bankruptcy law. The
trial court granted appellees’ plea to the jurisdiction and dismissed Fuqua’s claim. In a
single issue, Fuqua contends the trial court erred in granting the plea to the jurisdiction. 
We agree, and reverse and remand to the trial court for proceedings consistent with this
opinion. 
I. BACKGROUND
          In 1987, Fuqua (also an attorney) represented a purchaser in a transaction to
purchase a horse farm in Kentucky. To finance the purchase, Fuqua’s client and several
associates structured a separate real estate transaction designed to generate excess
funding in an amount equal to the purchase price of the horse farm. 
            In 1988, for reasons unrelated to the horse-farm transaction, Fuqua filed for
bankruptcy. In 1989, appellees (representing Sunbelt) filed an adversary proceeding in
Fuqua’s bankruptcy case, alleging fraud in connection with the horse-farm transaction. 
Fuqua alleges that appellees provided false and misleading information about him to the
Justice Department and that they participated in a criminal referral to the Justice
Department. The Justice Department began investigating the allegations and intervened
in the adversary proceeding. As a result, the bankruptcy judge stayed any actions by
Fuqua in the adversary proceeding pending completion of the investigation. The criminal
investigation resulted in Fuqua’s indictment in 1992. Between his indictment in 1992 and
his 1994 trial (in which he was acquitted of any criminal wrongdoing), Fuqua was
discharged by the bankruptcy court in 1993 and his bankruptcy case was closed. The
adversary proceeding remained pending in the bankruptcy court. Following Fuqua’s
acquittal on the criminal charges, the adversary proceeding went to trial. The bankruptcy
court granted a directed verdict in Fuqua’s favor in the adversary proceeding and judgment
was entered in his favor on May 13, 1997.
          In September 2000, Fuqua filed this suit for malicious prosecution in state district
court. Appellees filed a plea to the jurisdiction, contending that because Fuqua’s claim was
premised on the prior adversary proceeding, it was preempted by federal bankruptcy law. 
Following a hearing,


 the trial court granted appellees’ plea to the jurisdiction and
dismissed the suit. Fuqua filed a motion for new trial, which the trial court denied. This
appeal ensued. 
II. STANDARD OF REVIEW
          Whether a trial court has subject-matter jurisdiction is a legal question that we
review de novo.


 When reviewing a trial court order dismissing a cause for want of
jurisdiction, Texas appellate courts "construe the pleadings in the plaintiff’s favor and look
to the pleader's intent.”


 
          The purpose of a plea to the jurisdiction is to defeat a cause of action without regard
to whether the claims asserted have merit.


 “In deciding a plea to the jurisdiction, a court
may not weigh the claims' merits but must consider only the plaintiffs' pleadings and the
evidence pertinent to the jurisdictional inquiry.”


 The court must presume in favor of
jurisdiction unless lack of jurisdiction affirmatively appears on the face of the petition.


 If
a claim is not within a court's jurisdiction, and the impediment to jurisdiction cannot be
removed, then it must be dismissed.


 
III. ANALYSIS 
A. Fuqua’s Pleadings
          “To prevail in a suit alleging malicious prosecution of a civil claim, the plaintiff must
establish: (1) the institution or continuation of civil proceedings against the plaintiff; (2) by
or at the insistence of the defendant; (3) malice in the commencement of the proceeding;
(4) lack of probable cause for the proceeding; (5) termination of the proceeding in plaintiff's
favor; and (6) special damages.”


 
          We begin by addressing the allegations in Fuqua’s pleadings. In his second
amended petition, Fuqua alleges that appellees “knowingly, maliciously, and wantonly
acted without probable cause in initiating” a civil adversary proceeding against him. He
contends that during the course of the proceeding, appellees provided false and
misleading information to the Justice Department, which eventually resulted in his
indictment for bank fraud and tax fraud. He also alleges appellees acted maliciously in
initiating a criminal proceeding against him as an adjunct to the civil proceeding. Fuqua
contends that the civil and subsequent criminal actions were all terminated in his favor. 
Fuqua alleges that as a result of appellees’ conduct, he suffered damages in the form of
injury to his reputation and costs associated with his defense. He alleges he suffered
special damages in that as a result of appellees’ conduct, he was indicted and
subsequently tried for bank fraud.


 We conclude Fuqua has alleged a cause of action for
malicious prosecution based on appellees’ allegedly improper conduct in Fuqua’s
bankruptcy proceeding. 
B. Preemption 
          The issue before us is apparently one of first impression in Texas: whether Fuqua’s
claim for malicious prosecution is preempted by federal bankruptcy law. Appellees
contend federal law preempts Fuqua’s claim “by implication.” 
          Federal preemption of state law causes of action is appropriate if Congress
expressly legislates such preemption, or if Congressional intent can be implied from the
federal legislation.


 If Congress has legislated comprehensively and occupied an entire
field of regulation, leaving no room for supplemental state regulation, preemption is
implied.


 State law is also preempted to the extent it actually conflicts with federal law or
interferes with the accomplishment and execution of Congressional objectives.


           Appellees argue that the bankruptcy code includes remedial provisions and
sanctions designed to deter and punish improper use of the bankruptcy process. Because
Fuqua’s claim alleges improper use of the bankruptcy courts to file and prosecute an
adversary proceeding, appellees argue the extensive scheme of remedies in the
bankruptcy code preempts his state law claim.
          Although Congress has given the federal district courts “original and exclusive
jurisdiction of all cases under title 11,”


 the district courts do not have “exclusive jurisdiction
of all civil proceedings arising under title 11 or arising in or related to cases under title 11.”



Thus, the district courts and their bankruptcy units have exclusive jurisdiction only over “the
bankruptcy petition itself.”


 In other matters “arising in” or “related to” title 11 cases, unless
the bankruptcy code provides otherwise, state courts have concurrent jurisdiction.


           This Court has previously held that “the mere pendency of a bankruptcy action does
not automatically deprive a State court of all jurisdiction.”


 “In order to preclude a State
court’s jurisdiction, the state claim must interfere with the jurisdiction of the Bankruptcy
Court.”


 In Dunn, we held that a trial court did not err in failing to abate a state court action
because of the pendency of a bankruptcy where the bankruptcy was concluded sixteen
months before the trial of the state action and before the hearing on the plea in
abatement.


 
          Here, Fuqua was discharged by the bankruptcy court in 1993. Judgment was
entered in Fuqua’s favor in the adversary proceeding on May 13, 1997. Sunbelt appealed
and the appeal was dismissed on September 8, 1998. Thus, Fuqua’s cause of action for
malicious prosecution did not become final until September 8, 1998, when the appeals 
process in the adversary proceeding was exhausted.


 Thus, Fuqua’s malicious
prosecution claim did not accrue until five years after he was discharged in bankruptcy.


 
          We conclude that Fuqua’s state law claim for malicious prosecution cannot interfere
with the bankruptcy court’s jurisdiction and that the state court’s jurisdiction is therefore not
precluded.


 
          We have found no Texas or Fifth Circuit authority directly addressing whether state
claims for malicious prosecution are preempted by the bankruptcy code. In support of their 
argument in favor of preemption, appellees urge us to adopt the reasoning and holdings
in: MSR Exploration, Ltd. v. Meridian Oil, Inc., 74 F.3d 910, 916 (9th Cir. 1996); Gonzales
v. Parks, 830 F.2d 1033, 1035 (9th Cir. 1987); Miles v. Okun (In re Miles), 294 B.R. 756,
761 (B.A.P. 9th Cir. 2003); Glannon v. Garrett & Assoc., 261 B.R. 259, 266 (D. Kan.
2001); Ross v. Universal Studios Credit Union, 115 Cal. Rptr. 2d 712 (Ct. App. 2002);
Pauletto v. Reliance Ins. Co., 75 Cal. Rptr. 2d 334 (Ct. App. 1998); and Shiner v. Moriarty,
706 A.2d 1228, 1238 (Pa. Super. Ct. 1998). 
          Appellees rely on several grounds for their contention that state law claims for
malicious prosecution are preempted by the bankruptcy code. First, “Congress has
expressed its intent that bankruptcy matters be handled in a federal forum by placing
bankruptcy jurisdiction exclusively in the district courts as an initial matter.”


 “The fact that
federal courts have exclusive jurisdiction over bankruptcy matters indicates Congressional
intent to preempt state remedies.”


 Second, the comprehensive nature of the bankruptcy
code “demonstrates Congress’s intent to create a whole system under federal control
which is designed to bring together and adjust all of the rights and duties of creditors and
embarrassed debtors alike.”


 “Congress’[s] authorization of certain sanctions for the filing
of frivolous bankruptcy petitions should be read as an implicit rejection of other penalties,
including the kind of substantial damage awards that might be available in state court tort
suits.”


 Third, preemption of state law malicious prosecution claims furthers Congress’s
policy of creating uniformity in the bankruptcy code. “[T]he unique, historical, and even
constitutional need for uniformity in the administration of the bankruptcy laws is another
indication that Congress wished to leave the regulation of the parties before the bankruptcy
court in the hands of the federal courts alone.”


 Finally, “allowing state court remedies for
wrongful filings could discourage entry into the bankruptcy system.”


 
          We recognize that a majority of courts that have considered the preemptive nature
of bankruptcy law in the context of state tort claims alleging violations of the bankruptcy
process have found such claims to be preempted.


 
          In Gonzales, the Ninth Circuit held that a state court lacked subject matter
jurisdiction to hear a claim that a debtor’s filing of a voluntary bankruptcy petition was an
abuse of process.


 In Gonzales, the plaintiffs defaulted on an obligation, and the
defendants sought to foreclose a deed of trust on their property.


 Plaintiffs filed a
voluntary bankruptcy petition, halting the sale.


 The defendants filed an action in state
court, claiming that the plaintiffs’ bankruptcy filing was an abuse of process.


 After the
state court granted a default judgment against the plaintiffs, they filed an adversary
proceeding in the bankruptcy court, seeking relief from the state court judgment.


 The
bankruptcy court declared the state court judgment void as violative of the automatic stay
provision of the bankruptcy code.


 On appeal, the Ninth Circuit held the state judgment
was void because the grant of exclusive jurisdiction to federal courts over bankruptcy
petitions precluded collateral attacks on such petitions in state courts.


 Thus, unlike the
present case, the state court action at issue in Gonzales was instituted during the
pendency of the bankruptcy.


 
          In MSR, certain creditors of MSR filed claims against it in MSR’s bankruptcy
proceeding.


 The bankruptcy court disallowed the creditors’ claims.


 After MSR’s
reorganization plan was confirmed, it brought a claim for malicious prosecution in federal
district court, based on the creditors’ disallowed claims.


 Citing Gonzales, the Ninth Circuit
held that MSR’s claim for malicious prosecution was preempted by the bankruptcy code
and should have been brought in the bankruptcy court itself, not as a separate action.


 
          In Miles, a bankruptcy panel for the Ninth Circuit held that section 303(i)


 of the
bankruptcy code, which provides for fees, costs, and damages to be awarded against a
bad-faith involuntary petitioner, preempts state tort actions premised on the filing and
prosecution of involuntary bankruptcies.


 In Miles, a feud between neighbors resulted in
the filing of involuntary bankruptcy petitions against the alleged debtors.


 The bankruptcy
court ruled that one of the petitions was filed in bad faith, dismissed the petitions, and
awarded costs and attorneys’ fees to the alleged debtors.


 After the petitions were
dismissed, one of the alleged debtors and her children filed tort actions in state court
seeking damages for the filing and prosecution of the involuntary petitions.


 After the
defendants removed the actions to bankruptcy court, the bankruptcy court dismissed the
complaints, holding that the plaintiffs’ claims were preempted by section 303(i) of the
bankruptcy code.


 The Ninth Circuit panel affirmed the dismissal of the plaintiffs’ state law
claims.


 The court held that the plaintiffs’ claims for damages were “inextricably part of
the parent bankruptcy case.”


 Thus, we find the circumstances in Miles, where the
plaintiffs were seeking state tort damages in addition to the fees and costs already
awarded by the bankruptcy court for the bad-faith filing of involuntary petitions, 
distinguishable from the present case.
          Following the Ninth Circuit’s decisions in Gonzales and MSR, a California appellate
court held, in Pauletto, that the plaintiffs’ state law claims for malicious prosecution (based
on allegedly malicious filings in a bankruptcy proceeding) were preempted by federal
bankruptcy law.


 In that case, the Paulettos, owners of a construction business, filed a
voluntary bankruptcy proceeding.


 The Paulettos’ sureties filed an adversary proceeding
for a determination that the Paulettos’ indebtedness to them was not dischargeable.


 The
bankruptcy court entered judgment in favor of the Paulettos.


 The Paulettos then filed suit
in state court for malicious prosecution and abuse of process based on the allegedly
improper filing of the adversary proceeding.


 The state court held that it lacked subject
matter jurisdiction over the Paulettos’ claims.


 The California appellate court affirmed,
holding that “no authorized bankruptcy proceeding can properly support a state-law claim
for malicious prosecution or abuse of process.”


 The Pauletto court noted that “[t]he
essential preemption question is not whether the particular state-law remedy the Paulettos
seek could be obtained in bankruptcy court, but whether the availability of other remedies
under the federal scheme precludes their pursuit of a state-law remedy outside the
bankruptcy system.”


 It is unclear in Pauletto whether the Paulettos’ bankruptcy
proceeding was already dismissed when they filed their claim in state court for malicious
prosecution.


 We recognize, however, that the Pauletto court’s holding did not address
whether any remedy remained available to the Paulettos. Rather, the court held, without
qualification, that “[a] party aggrieved by bad faith and malicious filings in bankruptcy court
is limited to the remedies provided by the Federal Bankruptcy Code and the Federal Rules
of Bankruptcy Procedure.”


 
          In Ross, another California appellate court, addressing a matter “on all fours with
Pauletto,” held that the appellant’s state-law claims of malicious prosecution were
preempted by federal bankruptcy law.


 After Ross filed for bankruptcy, a creditor filed an
adversary proceeding requesting a determination that its judgment against him be declared
nondischargeable.


 After the bankruptcy court granted judgment in Ross’s favor, he sued
in state court alleging malicious prosecution and abuse of process based on the
bankruptcy court’s judgment.


 The state trial court held it had no jurisdiction and the
appellate court affirmed.


 The Ross court held that Ross’s remedy was “limited to such
satisfaction afforded to him in the bankruptcy court.”


 The court further noted that “Ross
chose not to invoke the remedies available to him in the bankruptcy court and he may not
circumvent them by filing a malicious prosecution action in state court.”


 
          In Shiner, the Pennsylvania Superior Court held that the Shiners’ state law claims, 
based on the defendants’ allegedly improper filings in the bankruptcy court, were
preempted by federal law.


 The Shiner court concluded that “[t]he Bankruptcy Code
permits no state law remedies for abuse of its provisions.”


 
          In Glannon, a Kansas federal district court held that the plaintiff’s state law 
malicious prosecution and abuse of process claims, based on the filing of an involuntary
bankruptcy petition, the filing of an adversary proceeding, and the violation of an automatic
stay, were preempted by the bankruptcy code.


 
          In addition to the cases cited by appellees, we note that a majority of courts that
have considered the preemptive nature of bankruptcy law in the context of state tort claims
alleging violations of the bankruptcy process have found such claims to be preempted.



In contrast, only a few courts have held that the bankruptcy code permits state law
remedies for abuse of its provisions.


 
          In Mullin, the Florida District Court of Appeals relied on its decision in R. L.
LaRoche, Inc. v. Barnett Bank of South Florida, 661 So.2d 855, 857 (Fla. Dist. Ct. App.
1995) (holding state courts had jurisdiction to hear and determine debtor's state law claims
related to alleged bad faith filing of an involuntary bankruptcy petition), in holding that the
state court had jurisdiction to consider Mullin’s malicious prosecution claim following the
bankruptcy court’s dismissal of an involuntary petition for bankruptcy filed against her.


 
After an involuntary bankruptcy petition was filed against her, Mullin sought a dismissal of
the petition from the bankruptcy court, but did not request or plead for punitive damages
or any other damages associated with the bad-faith filing of the petition, other than for
attorneys’ fees and costs.


 The bankruptcy court dismissed the petition, stating it had
been prosecuted “in bad faith and for an inappropriate purpose.”


 Mullin filed a malicious
prosecution complaint in state court, seeking damages associated with the bad-faith filing
of the petition.


 The defendants moved for summary judgment, contending the state court
lacked jurisdiction due to federal preemption of Mullin’s claims.


 The trial court granted
summary judgment in favor of the defendants, based on its finding that Mullin’s “claims
were available in the previous bankruptcy action.”


 Relying on its holding in LaRoche, the
Florida Court of Appeals reversed the summary judgment.


 In a separate concurring
opinion, Justice Gross noted that since the court’s decision in LaRoche, the majority of
courts considering the issue have held in favor of preemption.


 Justice Gross concluded
by expressing his preference that the court “recede from [its] decision in LaRoche and hold
that Mullin’s state tort law claim is preempted by the Bankruptcy Code.”


 
          LaRoche involved facts very similar to those in Mullin: following the bankruptcy
court’s dismissal of an involuntary bankruptcy petition filed against LaRoche (the debtor),
it filed suit in state court for malicious prosecution arising from the filing of the petition.


 
The trial court dismissed the claims on the grounds that the bankruptcy court had exclusive
jurisdiction over such claims.


 After noting that there is “no clear authority in the federal
courts directly on point,”


 the LaRoche court questioned some of the arguments supporting
preemption. In response to the argument that state court adjudication of malicious
prosecution claims would impair the right of access to the bankruptcy court, the court noted
that it could not discern “how Gonzales concluded that good faith petitioners would also be
discouraged by state court adjudications of bad faith.”


 The court continued:
It is not immediately obvious to us how damage awards against creditors
who have filed involuntary petitions in bad faith— which we take to mean
dishonestly and without any pretense of a legal and factual basis for so
doing— would deter creditors who have a good faith basis in law and fact to
seek such relief. Concededly, such awards would dissuade bad faith
creditors, but that seems a result that Congress itself intended. After all,
section 303(i)(2) quite specifically allows the bankruptcy court to assess
costs, fees and punitive damages against a creditor whom the court has
found to have filed an involuntary petition in bad faith. It is thus indisputable
that Congress contemplated, at least to that extent, to engage in some
deterrence of bad faith involuntary filings.
 
All creditors who contemplate filing an involuntary petition under section 303,
therefore, already face the prospect that a court may determine that they
acted in bad faith. Gonzales did not explain why bankruptcy court
adjudications of bad faith filings under section 303(i)(2) would not hinder
good faith creditor access, but that state court adjudications would
necessarily do so. Stated conversely, it is not immediately apparent how the
prospect of state courts doing what the bankruptcy courts already can do
might deter good faith filers. We are simply unable to discern a rationale for
the dictum in Gonzales.


 
 
          In response to the argument that the need for uniformity in the administration of
bankruptcy laws reflects Congress’s intent to leave the regulation of parties before the
bankruptcy court in the hands of the federal courts alone, the court noted that
Congress may simply have believed that any resulting mosaic [of
jurisprudence], an inevitable feature of our system under the Tenth
Amendment, is not necessarily undesirable. . . . It is not far-fetched to
assume that Congress intended that the several states be free to punish
[creditors who have abused the system] under their own laws, in their own
courts. And, in any event, there is a single overseer for the system in the
United States Supreme Court, which can always narrow such causes of
action to specific elements and proof if state decisions have the effect of
interfering with the primacy of federal bankruptcy law.


 
 
          Finally, the LaRoche court noted that “[t]he Supreme Court has long applied a
rebuttable presumption that, when Congress is silent on whether federal court jurisdiction
is exclusive, state courts have concurrent jurisdiction of claims arising under federal law.”


 
 Thus, the LaRoche court concluded that “because there is no express grant of exclusive
jurisdiction for these claims to the bankruptcy court and no strong reason to suppose that
Congress gave such power by implication,” the state court therefore has jurisdiction over
state law claims for malicious prosecution based on the bad-faith filing of an involuntary
petition.


 
          We recognize that the LaRoche court’s analysis turns primarily on the question of
jurisdiction, in contrast to the issue of preemption. We emphasize that several courts have
accurately noted the distinction. In Shiner, the court stated:
The trial court concluded that the wrongful use of process claim for damages
resulting from the filing of certain papers in the U.S. Bankruptcy Court was properly
brought in state court. Opinion, dated May 21, 1997, at 10-11. We must first note
that the trial court has misstated the issue. The issue is not whether the trial court
could exercise jurisdiction over the controversy. Rather, the issue is whether the
application of state tort law to the particular issue was pre-empted by the
Bankruptcy Code. . . . The issue is whether a wrongful use claim exists, or is it
pre-empted by the remedies available under the Bankruptcy Code.


 
 
          Similarly, in Pauletto, the California Court of Appeals noted:
 
The issue before us is not whether the jurisdictional language of section
1334 of title 28 of the United States Code technically or theoretically would
allow a state court malicious prosecution claim based on an underlying
bankruptcy proceeding, but whether allowance of such a claim conflicts with
the Bankruptcy Code's overall scheme of remedies and threatens Congress's
objectives of uniformity in bankruptcy law and exclusive federal jurisdiction
over bankruptcy proceedings. The general jurisdictional provisions of section
1334 of title 28 of the United States Code are immaterial to our implied
preemption analyses based on Gonzales, Gene R. Smith Corp., Idell,
Koffman, and MSR Exploration, Ltd.



 
          The narrow issue before us in the present case is whether the trial court erred in: 
(1) holding that it lacked jurisdiction over Fuqua’s claim for malicious prosecution because
such claims are preempted by federal bankruptcy law; and (2) dismissing his claim. As
noted above, Fuqua’s malicious prosecution claim did not accrue until five years after he
was discharged in bankruptcy. Relying on our holding in Dunn, we have concluded that
Fuqua’s malicious prosecution claim could not have interfered with the bankruptcy court’s
jurisdiction, and that the state court’s jurisdiction is therefore not precluded.


 Thus, the
state court has jurisdiction over Fuqua’s malicious prosecution claim unless we determine
that it is preempted by the bankruptcy code. 
          In the absence of any binding authority, on the facts of the present case, we decline
to speculate that Congress intended Fuqua’s claim for malicious prosecution to be
preempted by federal bankruptcy law. We agree with the LaRoche court that “the mere
fact that Congress might have decided to allow bankruptcy court monetary awards against
creditors who file in bad faith does not necessarily produce the conclusion that Congress
intended to give these claims exclusively to the bankruptcy courts.”


 We also share the
LaRoche court’s view that “[i]f [our] reading of the bankruptcy jurisdictional statute is
incorrect, we are comforted by the knowledge that the Supreme Court can tell us so, or
Congress can make its wishes express.”


 
          We REVERSE the trial court’s order granting appellees’ plea to the jurisdiction and
REMAND the cause to the trial court for proceedings consistent with this opinion.


                                                                                                                       
                                                               LINDA REYNA YAÑEZ
                                                                           Justice



Opinion delivered and filed this the
3rd day of March, 2005.