J-A08022-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| BRAD D. BAYLES, AN INDIVIDUAL, FOR HIMSELF, AND ON BEHALF OF JEFFERSON OF MONTICELLO, INC, A PENNSYLVANIA CORPORATION | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| | : | No. 463 WDA 2022 |
| ROBERT G. HAMROCK, AN INDIVIDUAL AND JEFFERSON OF MONTICELLO, INC., A PENNSYLVANIA CORPORATION | : : : : : | |
| Appellants | : | |

Appeal from the Order Entered April 4, 2022
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-18-2757

| | | |
|---|---|---|
| BRAD BAYLES, AN INDIVIDUAL FOR HIMSELF, AND ON BEHALF OF JEFFERSON OF MONTICELLO, INC. A PENNSYLVANIA CORPORATION | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : : | |
| v. | : | No. 573 WDA 2022 |
| | : : : | |
| ROBERT HAMROCK, AN INDIVIDUAL AND JEFFERSON OF MONTICELLO, INC. A PENNSYLVANIA CORPORATION | : : : : | |

Appeal from the Order Entered April 4, 2022
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-18-2757

J-A08022-23

BEFORE: STABILE, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.:        **FILED: October 18, 2023**

Robert Hamrock ("Hamrock") and Jefferson of Monticello, Inc. ("JOM") appeal, and Brad Bayles ("Bayles") and JOM cross-appeal, from the judgment entered in this shareholder derivative action. We affirm.

The relevant factual and procedural history of this case can be summarized as follows. Since the 1980s, Bayles and Hamrock have been business partners and co-owners of two residential real estate development companies: JOM and B&B Rainbow. They acquired JOM pursuant to a 50/50 ownership split to buy and sell real estate for investment purposes. The assets of JOM included approximately sixty acres of vacant real property in Jefferson Hills. At the time they acquired JOM, all JOM stock certificates were blank and thereafter remained in Hamrock's exclusive possession in his role as the president and CEO of JOM.

In 2003, Bayles discovered that Hamrock had secretly purchased a property that they had previously agreed to jointly purchase for JOM. Bayles commenced a lawsuit against Hamrock alleging that Hamrock had usurped a corporate opportunity belonging to JOM and committed fraudulent misrepresentation and civil conspiracy by purchasing the property in his wife's name before conveying the property to himself. Bayles also alleged that

_____

[*] Retired Senior Judge assigned to the Superior Court.

- 2 -

Hamrock breached his fiduciary duty to JOM by reimbursing himself for corporate expenses without consulting Bayles or sharing corporate information. Bayles requested the appointment of a custodian and a receiver for JOM. After Bayles failed to pursue the complaint (purportedly because he and Hamrock were in negotiations for a lucrative real estate transaction), the lawsuit was eventually terminated by local court rules.

In early 2011, Hamrock received inquiries regarding the potential lease of the oil, gas, and mineral rights ("OGM rights") on the vacant land owned by JOM. In June 2011, Hamrock recorded a deed, purportedly executed by both he and Bayles in 1992, conveying to Hamrock the OGM rights to the vacant land owned by JOM for one dollar ("the 1992 deed"). Hamrock initially leased the OGM rights to MDS Energy ("MDS"); however, he received no revenue from MDS. Accordingly, in 2014, Hamrock leased the OGM rights to EQT Production Company ("EQT") and received a $208,200 signing bonus.

In 2017, Bayles's attorney discovered the 1992 deed. In February 2018, Bayles/JOM brought a derivative shareholder action against Hamrock/JOM for breach of fiduciary duty, theft, and fraudulent conveyance of the OGM rights. Bayles also requested a constructive trust over JOM, appointment of a receiver, an accounting, and damages for unjust enrichment. Hamrock countersued Bayles/JOM for breach of fiduciary duty and unjust enrichment.

A few months later, in July 2018, Hamrock sold the OGM rights on the vacant land owned by JOM to Divot Energy Consultants, LLC, and Cavallo

Mineral Partners, LLC, for $336,547. In 2017 and 2019, Hamrock sold three properties owned by JOM without disclosing the sales to Bayles.

During the ensuing litigation, Hamrock claimed that, as he continued to put more of his personal funds into JOM, he and Bayles agreed to convey to Hamrock the OGM rights on the vacant land owned by JOM, and pursuant to this agreement, they executed the 1992 deed. Hamrock asserted that, although the 1992 deed was delivered to him, he did not immediately record it, but instead placed it in a drawer where it remained for nineteen years. Hamrock claimed that he and Bayles also agreed to change the ownership percentage of JOM from 50/50 to 60/40 in favor of Hamrock. With respect to the three JOM properties, Hamrock maintained that no taxes had been paid on the three properties, and that he paid $36,699.92 of his personal funds to unencumber the properties so that they could be sold by JOM. Finally, Hamrock claimed that Bayles had disappeared for fifteen years, and was not involved in the operation of JOM from 2003 until 2018.

Bayles disputed these claims and asserted that: he did not disappear, and he and Hamrock were in communication; there was no agreement to convey the OGM rights or change the ownership percentage to a 60/40 split; and the 1992 deed was forged by Hamrock. Bayles retained Khody Detwiler, an expert in the field of forensic document examination, who opined that the 1992 deed was forged. Bayles filed a motion for sanctions for fabrication of

evidence and forgery of discovered documents, which was deferred to the trial judge.

Hamrock filed a motion for partial judgment on the pleadings, seeking the dismissal of Bayles's claims regarding the 1992 deed (*i.e.*, breach of fiduciary duty and unjust enrichment) on the basis that they were barred by the applicable four-year statute of limitations which, according to Hamrock, began to run in June 2011, when he filed the 1992 deed. Bayles opposed the motion on the basis that the discovery rule tolled the statute of limitations until he discovered the fraudulent deed and the lease and sale of the OGM rights. The trial court denied the motion. Hamrock then filed a motion *in limine* seeking to exclude evidence pertaining to events occurring prior to 2015 on the same basis. The trial court denied the motion *in limine* on the basis that the question of whether the discovery rule operated to toll the statute of limitations was a factual determination to be made by a jury.

The matter proceeded to a jury trial in September 2021. Bayles' expert, Mr. Detwiler, opined that the 1992 deed and the 1991 corporate resolutions for B&B Rainbow were both forged, and that Bayles's signature (and those of three witnesses) on those documents had been copied and pasted from other legitimate documents. **See** N.T., 9/17-22/21, at 150-168. In light of the forgery opinion testimony provided by Mr. Detwiler, Hamrock claimed that any forgery was committed by the title company which prepared the deed. Gail Critchfield, the accountant for JOM, B&B Rainbow, and Hamrock personally,

testified that Hamrock told her that the $208,200 he received from EQT in 2014 was for the lease of OGM rights on real estate Hamrock owned personally, rather than from OGM rights on the vacant land owned by JOM. Ms. Critchfield also testified that she prepared corporate tax returns indicating a 50/50 ownership split for JOM until 2007, when Hamrock handed her a handwritten note in which he directed her to indicate a 60/40 split. Hamrock presented undated and unwitnessed JOM stock certificates on which he had written his name as evidence of the 60/40 ownership split.

At the conclusion of trial, the jury determined that: (1) the discovery rule tolled the statute of limitations on Bayles's claims for breach of fiduciary duty and unjust enrichment; (2) Bayles did not own 50 percent of JOM stock; (3) Hamrock breached his fiduciary duty, causing damages to Bayles/JOM; (4) Hamrock's breach was outrageous; (5) no punitive damages were to be assessed against Hamrock; (6) Hamrock was liable for unjust enrichment; (7) Bayles breached his fiduciary duty, causing damages to Hamrock/JOM; and (8) Bayles was not liable for unjust enrichment. *See* Jury Verdict, 9/23/21, at 1-3. The parties agreed that the jury did not need to determine compensatory damages, as the trial court could mold the verdict by using the jury's factual findings and the agreed-upon amounts received by Hamrock for the lease and subsequent sale of the OGM rights, as well as the amounts paid by Hamrock for delinquent property taxes on the three JOM properties he sold. The parties filed post-verdict motions. Bayles renewed his motion for

- 6 -

sanctions, which the trial court denied. Hamrock sought a directed verdict and judgment notwithstanding the verdict ("JNOV"), which the trial court denied. Both parties filed motions to mold the verdict. The trial court appointed Ms. Critchfield as custodian of JOM and ordered Bayles to submit a petition for attorneys' fees.

Ultimately, the trial court entered a judgment directing that: (1) Hamrock pay $237,830 in compensatory damages (representing 40 percent of the amounts received by Hamrock for the lease and sale of the OGM rights) and pre-judgment interest on that amount to the custodian of JOM, to be paid over to Bayles; (2) Hamrock pay $84,406 to the custodian of JOM, to be paid over to Bayles for his attorneys' fees and costs; and (3) that Bayles pay Hamrock $14,661 in compensatory damages (representing 40 percent of the delinquent property taxes paid by Hamrock) to the custodian of JOM, to be paid over to Hamrock. Hamrock filed a timely notice of appeal, and Bayles cross-appealed. Hamrock, Bayles, and the trial court complied with Pa.R.A.P. 1925.

On appeal, Hamrock raises the following issues for our review:

A. Whether the trial judge erred by denying [Hamrock's] motion for partial judgment on the pleadings and motion *in limine*, thereby allowing claims, evidence, and testimony to be presented to the jury that should have been excluded due to the statute of limitations?

B. Whether the jury erred in its decision that the discovery rule tolled the applicable statutes of limitations for claims of breach of fiduciary duty and unjust enrichment brought by [Bayles]?

C. Whether the trial judge erred in his decision to apply pre-judgment interest to [Bayles's] award?

D. Whether the trial judge erred in his interpretation of 15 Pa.C.S.A. § 1784(b)?

E. Whether the trial judge erred in his *sua sponte* determination that Hamrock acted illegally, oppressively, and fraudulently pursuant to 15 Pa.C.S.A. § 1767?

Hamrock's Brief at 5 (unnecessary capitalization omitted).

In his cross-appeal, Bayles raises the following issues for our review:

A. Whether the trial court erred in awarding $ 14,661.97 in favor of [JOM] and against . . . Bayles for property taxes paid at real estate closings for the sale of corporate real estate where Hamrock conducted those closings without any notice to Bayles[?]

B. Whether the trial court erred in failing to set aside that portion of the jury verdict that failed to award punitive damages in favor of Bayles and against Hamrock where the jury found that Hamrock's conduct was outrageous and the overwhelming evidence showed that Hamrock forged documents, stole corporate assets and defrauded third parties?

C. Whether the trial court erred in relying upon the jury slip in awarding Bayles only 40% of the compensatory damages where the jury slip was ambiguous and where the jury instructions failed to instruct which party had the burden of persuasion or proof with regard to ownership of the corporation?

Bayles' Brief at 5 (unnecessary capitalization omitted).

Initially, we will address Hamrock's issues. In his first issue, Hamrock challenges the trial court's pretrial rulings denying his motion for partial judgment on the pleadings and motion *in limine*. In reviewing the trial court's grant or denial of a motion for judgment on the pleadings, our scope of review

is plenary. ***See Vetter v. Fun Footwear Co.***, 668 A.2d 529, 531 (Pa. Super.

1995) (*en banc*). Our standard of review for such rulings is as follows:

> Our review of a trial court's decision to grant . . . judgment on the pleadings is limited to determining whether the trial court committed an error of law or whether there were facts presented which warranted a jury trial. In so reviewing, we look only to the pleadings and any documents properly attached thereto. Judgment on the pleadings is proper only where the pleadings evidence that there are no material facts in dispute such that a trial by jury would be unnecessary.

***Pennsylvania Financial Responsibility Assigned Claims Plan v. English***,

664 A.2d 84, 86 (Pa. 1995). A motion for judgment on the pleadings will be

granted where, on the facts averred, the law says with certainty that no

recovery is possible. ***See Am. Appliance v. E.W. Real Estate Mgmt.***, 769

A.2d 444, 446 (Pa. 2001).

Our standard of review of a ruling on a motion *in limine* is well-settled:

> A motion *in limine* is used before trial to obtain a ruling on the admissibility of evidence. It gives the trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the jury. A trial court's decision to grant or deny a motion *in limine* is subject to an evidentiary abuse of discretion standard of review.
>
> Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> In addition, to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

***Parr v. Ford Motor Co.***, 109 A.3d 682, 690-91 (Pa. Super. 2014) (citations omitted).

Both of Hamrock's motions were based on a claim that the relevant statute of limitations had expired. "Statutes of limitations are rules of law that set time limits for bringing legal claims." ***Didomizio v. Jefferson Pulmonary Assocs. & Asthma Allergy & Pulmonary Assocs., P.C.***, 280 A.3d 1039, 1046 (Pa. Super. 2022). The general rule is that a cause of action accrues, and thus the applicable limitations period begins to run, when an injury is inflicted. ***See Wilson v. El-Daief***, 964 A.2d 354, 361 (Pa. 2009); ***see also Pocono International Raceway, Inc. v. Pocono Produce, Inc.***, 468 A.2d 468, 471 (Pa. 1983) (holding that the statute of limitations begins to run as soon as the right to institute and maintain a suit arises). Once a cause of action has accrued and the prescribed statutory period has run, an injured party is barred from bringing his cause of action. ***See Fine v. Checcio***, 870 A.2d 850, 857 (Pa. 2005).

However, in certain cases involving latent injury, and/or instances in which the causal connection between an injury and another's conduct is not apparent, the discovery rule may operate to toll the statute of limitations until the plaintiff discovers, or reasonably should discover, that he has been injured and that his injury has been caused by another party's conduct. ***See id***. at 859. As this Court has explained:

The discovery rule is a judicially created device which tolls the running of the applicable statute of limitations until that point when the plaintiff knows or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct. The limitations period begins to run when the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress.

**Melley v. Pioneer Bank, N.A**., 834 A.2d 1191, 1201 (Pa. Super. 2003) (internal quotation marks and citation omitted).

Although Pennsylvania favors the strict application of a statute of limitations, **see Communications Network Int'l**, 187 A.3d 951, 961 (Pa. Super. 2018), the discovery rule jurisprudence applies a reasonable-diligence requirement as opposed to an all-vigilance one. **See Nicolau v. Martin**, 195 A.3d 880, 895 (Pa. 2018). Moreover, because the reasonable diligence determination is fact intensive, the determination of when a plaintiff should reasonably be aware of their injury is generally an issue of fact to be determined by the jury. **See id**. at 886, 893; **see also Fine**, 870 A.2d at 859 (holding that "the question as to when a party's injury and its cause were discovered or discoverable is for the jury").

Relevantly, the statute of limitations for an action upon a contract implied in law must be commenced within four years. **See** 42 Pa.C.S.A. § 5525(a)(4).[1]

---

[1] As both Bayles and Hamrock based their respective claims on their status as shareholders, the trial court determined that their claims derive from
*(Footnote Continued Next Page)*

- 11 -

Hamrock contends that Bayles did not exercise due diligence to discover the alleged harm caused by the filing of the 1992 deed in 2011. According to Hamrock, Bayles should have been on notice of potential harm by Hamrock since 2003, when Bayles sued Hamrock for theft of corporate assets and accused him of cheating, stealing, and lying to Bayles. Hamrock maintains that "[t]he fact that Bayles filed a suit against Hamrock alleging theft and breach of fiduciary duty is enough for Bayles to have put himself on notice of potential future harm." Hamrock's Brief at 23. Hamrock additionally argues that "as the part-owner of a real estate investment company, Bayles could either easily regularly review the company assets, or hire counsel to do the same." *Id*. Hamrock asserts that Bayles's failure to check on the company assets for fifteen years after filing the 2003 lawsuit, and seven years after the 2011 filing of the 1992 deed, shows that he did not act in a reasonably diligent manner, and therefore the discovery rule should not apply to toll the statute of limitations.

Hamrock further contends that, assuming he breached his fiduciary duty and was unjustly enriched, the initial action which led to those claims was the recording of the 1992 deed rather than his subsequent dealings with the oil and gas companies. Hamrock insists that "the leases and sales were a secondary form of injury, but the primary injury that led to Bayles's claims

contractual agreements implied in law pertaining to their ownership rights in JOM. **See** Trial Court Opinion, 7/5/22, at 5. Neither party disputes this ruling.

was the 2011 recording of the 1992 [d]eed, which stripped the OGM rights away from [JOM], thus depriving Bayles of his ownership rights and potential for future income." *Id*. at 24-25. On this basis, Hamrock contends that the trial court erred by denying his motion for partial judgment of the pleadings and his motion *in limine*, thereby allowing the admission into evidence of claims, exhibits, and testimony that should have been excluded due to the expiration of the four-year statute of limitations in 2015.

The trial court considered Hamrock's first issue and concluded that it lacked merit. The court reasoned:

> . . . [A]ll of . . . Hamrock's statute of limitations arguments assume commencement of the limitations periods in 2011[,] when he recorded the deed that conveyed [to] him[self] all of [JOM's OGM rights]. This assumption is improper. The statute of limitations does not begin to run until the right to institute and maintain a lawsuit arises. However, the damages element of . . . Bayles'[s] breach of fiduciary duty claim and the appreciation of benefits element of his unjust enrichment claim did not arise until . . . Hamrock received payments for the natural gas in 2014 and 2018. [The] four[-]year statute of limitations . . . began to run on March 26, 2014[,] when . . . Hamrock received $208,200 from EQT . . . and therefore had not expired when . . . Bayles[] filed the lawsuit [i]n February . . . 2018. Hence, [the trial court's] ruling against . . . Hamrock on the statute of limitations was correct.
>
> Even if the statutes of limitations commence[d] to run in 2011 with the recording of the deed conveying the [OGM rights], the discovery rule tolls them and they d[id] not begin to run until . . . Bayles discover[ed] or reasonably should [have] discover[ed] that he ha[d] been injured and that his injury was caused by . . . Hamrock's conduct. ***See Fine*** . . . 870 A.2d . . . at 859 . . .. This is a factual determination ordinarily made by a jury. *Id*. [a]t 858. . . ..

- 13 -

. . . Hamrock argue[d] the discovery rule does not apply as a matter of law because he produced the deed to the [OGM rights] during discovery in the 2003 lawsuit, before the deed was recorded. . . . Hamrock did testify that he responded to . . . Bayles' discovery in the 2003 lawsuit by sending, among other things, the [OGM] deed to his attorney. However, . . . Bayles testified that . . . Hamrock never responded to the discovery request in the 2003 lawsuit. Hence, whether the deed was produced in the 2003 lawsuit was a disputed factual issue requiring an assessment of the parties' credibility, and [the trial court] was correct to allow the jury to determine if . . . Bayles knew or reasonably should have known of the deed from the 2003 lawsuit.

. . . Hamrock also argue[d] the 2003 lawsuit alleges nearly the same claims as this 2018 lawsuit. This supposedly put . . . Bayles on inquiry notice of the potential for future harm, which again, according to . . . Hamrock, would make the discovery rule inapplicable as a matter of law. This argument is meritless. First, the 2003 lawsuit and this 2018 lawsuit do not allege nearly the same claims. The 2003 lawsuit alleges Mr. and Mrs. Hamrock usurped a corporate opportunity to acquire realty[,] while this 2018 lawsuit alleges . . . Hamrock forged a deed and used the forged deed to obtain over $500,000 that belonged to [JOM]. As a matter of law, was . . . Bayles not reasonably diligent because he did not anticipate . . . Hamrock's misconduct would continue after he was caught and also would transform into forgery? Reasonable minds could find . . . Bayles exercised reasonable diligence even though he did not anticipate . . . Hamrock's forgery. The concept of a plaintiff being on inquiry notice described in ***Rice v. Diocese of Altoona-Johnstown***[,] 255 A.3d 237 (Pa. 2021). . . involves a secondary cause of a known injury. No secondary cause is alleged by . . . Bayles[,] and his injury was not known since it involved the unobservable lease and sale of natural gas that is hidden below the surface of the land. ***See Lewey v. H.C. Frick Coke Co.***, . . . 31 A.261[, 263-64] ([Pa.] 1895) ([holding that] plaintiff could not know that a trespasser had subterraneously extracted coal from his land). In any event, the injury alleged in the 2003 lawsuit is different from the injury in the 2018 lawsuit. Therefore, the 2003 lawsuit did not put . . . Bayles on inquiry notice of the conduct of . . . Hamrock set forth in the 2018 lawsuit.

. . . Hamrock also argue[d] . . . Bayles did not exercise reasonable diligence because he abandoned his 2003 lawsuit and afterwards disappeared for nearly fifteen years. According to . . . Hamrock, this is another reason the discovery rule does not apply as a matter of law. But, . . . Bayles explained that litigating the 2003 lawsuit with . . . Hamrock could have jeopardized a pending purchase of their property that would generate over a million dollars. Bayles further explained that he planned to wait until the sale closed, have the proceeds held in escrow and then fight it out relative to the 2003 lawsuit. The decision on whether this was a lack of reasonable diligence or a sensible course of action is a question of fact for the jury. Similarly, . . . Bayles denied that he disappeared for nearly fifteen years and testified to regular communications with . . . Hamrock (including their fight for approval for a sale of property to UPMC that was contingent on approval of zoning for a hospital). Hence, whether . . . Bayles disappeared for nearly fifteen years also is a question of fact for the jury. Therefore, it would be incorrect to deem the discovery rule inapplicable as a matter of law.

Trial Court Opinion, 7/5/22, at 4-7 (quotations marks and some citations omitted).

We discern no error or abuse of discretion by the trial court in denying Hamrock's motion for partial judgment on the pleadings and his motion *in limine*. As explained above, a motion for judgment on the pleadings will not be granted unless, on the facts averred, the law says with certainty that **no** recovery is possible. **See Am. Appliance**, 769 A.2d at 446. Here, Bayles averred that Hamrock breached his fiduciary duty by failing to disclose his secret and fraudulent conveyance of the OGM rights to himself, and further failing to disclose his subsequent lease of the OGM rights to EQT. **See** Complaint, ¶¶ 18, 45. Because Bayles asserted that Hamrock's misdeeds were both "secret" and "undisclosed," the claims asserted in Bayles's

complaint were subject to the potential application of the discovery rule. *Id*.; *see also Fine*, 870 A.2d at 859 (explaining that the discovery rule may apply in cases involving latent injury, and/or instances in which the causal connection between an injury and another's conduct is not apparent). Thus, given the potential application of the discovery rule to toll the statute of limitations, it could not be said with certainty that *no* recovery was possible. *See Am. Appliance*, 769 A.2d at 446. Accordingly, the trial court properly denied Hamrock's motion for partial judgment on the pleadings.

With respect to the denial of Hamrock's motion *in limine*, the determination of when Bayles discovered or reasonably should have discovered his injury was an issue of fact to be determined by the jury. *See Fine*, 870 A.2d at 857; *see also Nicolau*, 195 A.3d at 893 (explaining that the determination of when a plaintiff should reasonably be aware of their injury is generally an issue of fact to be determined by the jury). Thus, the trial court correctly determined that the jury should be permitted to consider all evidence pertinent to the question of whether the discovery rule tolled the statute of limitations. Accordingly, we discern no error or abuse of discretion by the trial court in denying Hamrock's motion *in limine* regarding the statute of limitations. For these reasons, Hamrock's first issue merits no relief.

In his second issue, Hamrock contends that the jury erred in its decision that the discovery rule tolled the applicable statutes of limitations for Bayles's claims for breach of fiduciary duty and unjust enrichment. Although

Hamrock's second issue is inartfully presented as a claim of jury error, we discern that he intended to challenge the trial court's denial of his motion for JNOV. Our standard of review of a denial of a motion for JNOV is well-settled:

> Appellate review of a denial of JNOV is quite narrow. We may reverse only in the event the trial court abused its discretion or committed an error of law that controlled the outcome of the case. Abuse of discretion occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias[,] or ill-will.

> When reviewing an appeal from the denial of a request for [JNOV], the appellate court must view the evidence in the light most favorable to the verdict[-]winner and give him or her the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences. . . . Thus, the grant of [JNOV] should only be entered in a clear case and any doubts must be resolved in favor of the verdict[-]winner. Furthermore, [i]t is only when either the movant is entitled to judgment as a matter of law or the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant that an appellate court may vacate a jury's finding.

**Phillips v. Lock**, 86 A.3d 906, 919 (Pa. Super. 2014) (citation omitted).

Hamrock claims that there are two different applications of the discovery rule: one which is more liberal and plaintiff-friendly; and another which is stricter and less plaintiff-friendly. Hamrock maintains that Pennsylvania has adopted the latter approach, and requires only notice inquiry to commence the running of the statute of limitations where the injury could be found with the exercise of reasonable diligence. According to Hamrock, "it must be determined whether Bayles could have paid attention to the corporate assets; had sufficient knowledge, or access to those with sufficient knowledge, to

check on the corporate assets; the intelligence to know how to be reasonably diligent; and sound judgment to protect his own interests." Hamrock's Brief at 27-28. Hamrock asserts that, if Bayles was involved in the operation of JOM from 2003 until 2018, as he claimed at trial, then he should have been regularly checking on JOM's assets and would have discovered the 1992 deed in 2011. Hamrock points to his own testimony that Bayles stopped taking part in JOM's operations and failed to regularly check on JOM's assets to ensure that Hamrock, whom Bayles had already accused of theft, wasn't stealing company assets. Hamrock asserts that Bayles hired several attorneys between 2010 and 2017, any of whom could have checked the recorder of deeds website and discovered the 1992 deed. According to Hamrock, Bayles did not exhibit sound judgment by accusing his business partner of theft, and then disappearing for fifteen years while leaving his property in the hands of an alleged thief.[2]

_____

[2] Hamrock additionally argues that the jury misunderstood the trial court's jury instructions regarding the discovery rule because the court failed to clarify the definition of the term "to toll." Hamrock's Brief at 31-34. However, Hamrock failed to preserve this issue for our review, as he did not raise any objection to the court's jury instructions at trial. Indeed, as the trial court pointed out, "Hamrock's requested point for charge on the statutes of limitations was, in fact, verbally given to the jury." *See* Trial Court Opinion, 7/5/22, at 9. Instead, Hamrock challenged the verdict sheet submitted to the jury. *See* Post-Verdict Motion, 1/15/22, at ¶¶ 24-27; *see also* Amended Post-Verdict Motion, 3/21/22, at ¶¶ 24-27. Consequently, as Hamrock did not raise a challenge to the jury instructions at trial, the issue is waived. *See* Pa.R.A.P. 302(a) (providing that issues not raised in the trial court are waived and may not be raised for the first time on appeal).

As explained above, when reviewing the denial of a motion for JNOV, we must view the evidence in the light most favorable to the verdict-winner, giving him the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences. *See Phillips*, 86 A.3d at 919. Here, as the trial court explained above, Bayles testified that the 1992 deed was not produced in discovery during the 2003 lawsuit, denied that he disappeared for nearly fifteen years, and testified to regular communications with Hamrock. *See* Trial Court Opinion, 7/5/22, at 4-7. Bayles further testified that he did not authorize the conveyance of the OGM rights to Hamrock, his signature on the deed conveying the OGM rights was forged, and he did not become aware of the 1992 deed until 2017, when his attorney stumbled across the deed. *See* N.T., 9/17-22/21, at 236-37, 242. Viewing these facts in the light most favorable to Bayles, we cannot conclude that the evidence was such that no two reasonable minds could disagree that the discovery rule did not apply. *See Phillips*, 86 A.3d at 919. As such, we discern no abuse of discretion by the trial court in denying Hamrock's motion for JNOV.

In his third issue, Hamrock contends that the trial court erred by awarding prejudgment interest on the damage award to Bayles. We review a challenge to an award of prejudgment interest for abuse of discretion. *See Linde v. Linde*, 220 A.3d 1119, 1150 (Pa. Super. 2019). Prejudgment interest may be awarded when a defendant holds money or property which

belongs to the plaintiff. *See id*.; *see also Kaiser v. Old Republic Insurance Co.*, 741 A.2d 748, 755 (Pa. Super. 1999). While a plaintiff in a contract action for failure to pay a liquidated sum has right to prejudgment interest over which the court has no discretion, *see TruServ Corp. v. Morgan's Tool & Supply Co., Inc.*, 39 A.3d 253, 264 (Pa. 2012), the decision whether to award prejudgment interest in other actions for wrongfully withheld funds and the amount of such an award are matters of equity subject to the trial court's discretion. *See Sack v. Feinman*, 413 A.2d 1059, 1065-66 (Pa. 1980); *see also Linde*, 220 A.3d at 1150.

Hamrock maintains that he was not a trustee for Bayles or for JOM, and he did not invest any company assets for his own benefit. Hamrock asserts that he sold his own assets and, therefore, damages should only be assessed from the money he earned on the sale. Hamrock points out that, because the jury awarded no punitive damages against him, the imposition of prejudgment interest should be viewed as punitive damages. Finally, Hamrock argues that prejudgment interest should be suspended from the beginning of the COVID-19 judicial emergency until the first day of the trial, as the shutdown was not the fault of either party, and he should not be punished for the unforeseeable delay.

The trial court considered Hamrock's third issue and determined that it lacked merit. The court reasoned:

> . . . Since 2014 and 2018 until the verdict in 2021, . . . Hamrock wrongfully deprived . . . Bayles of his portion of the

$544,747 from the natural gas lease and sale. It is indisputable that the earlier in time money is received the greater its value will be to the recipient. . . . Bayles will not be made whole unless he is awarded pre-verdict interest to compensate him for this "time value of money." Hence, interest on the funds from the time they were wrongfully withheld is necessary to make . . . Bayles whole again. . . . Since the jury found . . . Hamrock was unjustly enriched and pre-verdict interest is needed to make [Bayles] whole, [the] award of pre-verdict interest to [Bayles/JOM] is correct.

. . . Hamrock also argues that [the trial court] erroneously awarded pre-verdict interest between March 24, 2020[,] and the date of the verdict[,] since all trials were suspended then due to the COVID-19 pandemic. The Superior Court of Pennsylvania recently addressed a similar argument in **_Getting v. Mark Sales & Leasing, Inc._**, [274 A.3d 1251 (Pa. Super.] 2022). While the pre-verdict interest in that case was authorized under Pennsylvania Rule of Civil Procedure 238 ("Damages for Delay in Actions for Bodily Injury, Death or Property Damage"), Rule 238 also is premised on the concept of making a plaintiff whole. **_Id_**. The Superior Court's observation that COVID-19 and the judicial emergency do not diminish the right to be made whole or allow tortfeasors to reap unjust windfalls . . . is therefore also applicable to . . . Hamrock's wrongful deprivation of funds from [Bayles/JOM] in this case. Thus, [the] award of interest between March 24, 2020[,] and the date of the verdict was not an error.

Trial Court Opinion, 7/5/22, at 9-10.

We discern no abuse of discretion by the trial court in awarding pre-judgment interest on the damage award to Bayles/JOM. Contrary to Hamrock's assertion otherwise, the jury determined that the OGM rights in question were the property of JOM, not Hamrock, and that Hamrock fraudulently deprived Bayles/JOM of the OGM rights by forging a deed. That the jury did not award punitive damages for such misconduct does not negate the fact that Hamrock wrongfully deprived Bayles/JOM of a corporate asset,

as well as monies derived from the lease and subsequent sale of that corporate asset. Accordingly, as Hamrock wrongfully held money that belonged to Bayles/JOM, the trial court did not abuse its discretion in awarding prejudgment interest. *See Linde*, 220 A.3d at 1150; *see also Kaiser*, 741 A.2d at 755.

Further, Hamrock was not entitled to any diminution in prejudgment interest because of the temporary shutdown of Pennsylvania courts due to the COVID-19 pandemic. As this Court explained in *Getting*:

> COVID-19 and the judicial emergency it created did not diminish the rights of plaintiffs to be made whole. . . .
>
> Moreover, the interest on the damages was the plaintiffs' money by right, by virtue of the jury's verdict . . . .. We do not read the [*In re: General Statewide Judicial Emergency*,] March 18, 2020 Order of the Supreme Court as permitting tortfeasors to reap unjust windfalls from a five month delay that was clearly beyond the control of their victims. Here, closure of the Court of Common Pleas . . . did not alter the indisputable fact that the [defendant] retained and had unfettered use of the [plaintiffs'] money throughout the judicial emergency. As such, the [defendant] must compensate the [plaintiffs] for using their money during the judicial emergency to the fullest extent of Pa.R.C.P. 238.

*Getting*, 274 A.3d at 1262 (quotation marks omitted).

Although *Getting* concerned an award of delay damages pursuant to Rule 238, we conclude that the same logic applies to a discretionary award of prejudgment interest. The closure of the court of common pleas in Allegheny County did not alter the fact that Hamrock retained and had the unfettered use of the wrongfully obtained profits for the lease and sale of JOM's OGM

rights throughout the judicial emergency. As such, he must compensate JOM/Bayles for using their money during the judicial emergency. For these reasons, Hamrock's third issue warrants no relief.

In his fourth issue, Hamrock contends that the trial court erred in its interpretation of 15 Pa.C.S.A. § 1784(b) when awarding attorneys' fees and other expenses to Bayles/JOM. Our standard of review of an award of attorneys' fees is well settled: "we will not disturb a trial court's determinations absent an abuse of discretion. A trial court has abused its discretion if it failed to follow proper legal procedures or misapplied the law." ***Kessock v. Conestoga Title Ins. Co.***, 194 A.3d 1046, 1059 (Pa. Super. 2018) (citation omitted).

Section 1784(b) provides:

> If a derivative action is successful in whole or in part, the court may award the plaintiff reasonable expenses, including reasonable attorney fees and costs, from the recovery of the business corporation, but in no event shall the attorney fees awarded exceed a reasonable proportion of the value of the relief, including nonpecuniary relief, obtained by the plaintiff for the corporation.

15 Pa.C.S.A. § 1784(b).

Hamrock maintains that section 1784(b) "means that the plaintiff's costs must reduce the corporation's recovery, not be added to it." Hamrock's Brief at 40. According to Hamrock, the trial court improperly twisted the wording of the statute to award additional costs and fees to Bayles/JOM. Hamrock asserts that, as the 60 percent owner of JOM, he would have been eligible to

- 23 -

receive 60 percent of the profits had JOM retained the OGM rights and then leased and sold them. Hamrock asserts that the maximum compensatory judgment that can be awarded in this matter is the remaining shareholder portion (*i.e.*, 40 percent) of the funds that Hamrock earned by leasing and selling the OGM rights.

The trial court considered Hamrock's fourth issue and determined that it lacked merit. The court reasoned:

> [The trial court's] orders entered a verdict in favor of [Bayles/JOM] and against . . . Hamrock for compensatory damages and interest in the total amount of $594,576.56, with forty percent of the total, or $237,830.62 due to [JOM's] custodian from . . . Hamrock immediately. [The] January 4, 2022 order also specified that an amount in addition to the $237,830.62 would be due from . . . Hamrock in the future after calculation of expenses under [section] 1784(b). [The] March 2, 2022 order awarded . . . Bayles/JOM] $84,406.62 under [section] 1784(b) ($76,607.33 for attorney fees and the balance for expert witness fees, lodging and travel), with it to immediately be paid to [JOM's] custodian by . . . Hamrock.
>
> . . . [Section] 1784(b)] allows a shareholder who has been successful in a derivative lawsuit to be reimbursed for litigation expenses. These expenses are paid to the successful shareholder out of the funds recovered by the corporation. Since the amount of the expenses is not added on to the corporation's recovery, there cannot possibly be any merit to . . . Hamrock's argument that the $84,406.62 award of expenses is punitive.
>
> [] Hamrock next makes the argument that [] Bayles should collect the $84,406.62 from the damages obtained by [JOM] from [] Hamrock. Clearly[, ] Hamrock is confused as [the trial court] ordered exactly what [he] seems to argue [it] did not order. [JOM's] total recovery is $594,576.56. [] Hamrock was never ordered to pay in excess of that amount. [] Hamrock instead was ordered to pay the corporation $237,830.62 for [] Bayles'[s] forty percent ownership plus $84,406.62 for his litigation expenses for a total of $322,237.24. The difference

- 24 -

between [JOM's] $594,576.56 total recovery and the $322,237.24 [] Hamrock must pay [JOM] may be retained by [] Hamrock as the sixty percent shareholder.

Trial Court Opinion, 7/5/22, at 11-12 (unnecessary capitalization omitted).

We discern no abuse of discretion by the trial court in awarding attorneys' fees and costs to Bayles/JOM pursuant to section 1784(b). The plain language of the statute permits the trial court to award reasonable expenses to a successful plaintiff in a shareholder derivative action from the total damages recovered by the business corporation. In the instant shareholder derivative action, Bayles/JOM were successful in their claims against Hamrock. Thus, the trial court did not abuse its discretion in awarding such fees to Bayles from the total damages recovered by JOM. Accordingly, no relief is due.

In his fifth issue, Hamrock contends that the trial court abused its discretion by appointing a custodian for JOM. The decision to appoint a custodian or receiver is within the sound discretion of the trial court. *See Abrams v. Uchitel*, 806 A.2d 1, 8 (Pa. Super. 2002). The trial court may appoint a receiver to prevent waste, dissipation of assets, fraud, or mismanagement. *See Hankin v. Hankin*, 493 A.2d 675, 677 (Pa. 1985). "Where substantial evidence supports findings that indicate that a receiver is necessary to preserve the property and the rights of all the parties concerned . . . the [trial court's] exercise of discretion must be affirmed." *Id*. at 678.

Section 1767 provides, in pertinent part, as follows:

**(a) *General rule.* —** Except as provided in subsection (b), upon application of any shareholder, the court may appoint one or more persons to be custodians of and for any business corporation when it is made to appear that:

\* \* \* \*

**(2)** in the case of a closely held corporation, the directors or those in control of the corporation have acted illegally, oppressively or fraudulently toward one or more holders or owners of 5% or more of the outstanding shares of any class of the corporation in their capacities as shareholders, directors, officers or employees[.]

15 Pa.C.S.A. § 1767(a)(2).

Hamrock asserts that the trial court erred by determining *sua sponte* that he acted illegally, oppressively, and fraudulently so as to justify the appointment of a custodian pursuant to 15 Pa.C.S.A. § 1767. Hamrock argues that, although Bayles requested the appointment of a custodian in his complaint, he did not seek a factual determination that Hamrock acted illegally, oppressively, or fraudulently. Hamrock points out that allegations of fraud must be pleaded with particularity pursuant to Pa.R.C.P. 1019(b), and that Bayles's complaint did not assert a claim for fraud. Hamrock maintains that, had the complaint asserted a claim for fraud, he would have had the opportunity to object to such a claim and seek to have it dismissed from the pleading. Hamrock contends that the trial court's *sua sponte* determination— when molding the verdict—that he acted illegally, oppressively, and fraudulently, deprived him of the opportunity to defend himself against such a factual finding. On this basis, Hamrock claims that the trial court's findings

of illegal, oppressive, and fraudulent conduct should be stricken from the trial court's order.

The trial court considered Hamrock's fifth issue and determined that it lacked merit. The court reasoned:

> [] Hamrock first argues that [the trial court's] determination that his actions were illegal, oppressive[,] and fraudulent was made *sua sponte*. However, the provisions in the Business Corporation Law require this determination before a custodian can be appointed and [] Bayles first requested the court appoint a custodian in the complaint . . ., again on the record just before the trial began[,] . . . and finally in [Bayles's] response to [Hamrock's] motion to mold verdict . . .. Hence, the determination that [] Hamrock acted illegally, oppressively and fraudulently was not initiated by [the trial court], but instead was at the request of [] Bayles.
>
> [] Hamrock also argues the jury never made a determination that he forged any document or engaged in any fraudulent activity. While it is true the jury was not specifically asked if [] Hamrock forged the [OGM] rights deed, there was overwhelming circumstantial evidence that he was the forger and his testimony concerning the signatures on the deed was inconsistent (*see* [N.]T[.], [9/17-22/21, at] 391-[]93, 418-[]19 and 464-[]71) and incredible. [The trial court] was the one to decide that [] Hamrock acted illegally, oppressively[,] and fraudulently because [he] had no right to a jury trial on the issue of appointing a custodian. *See Fazio v. Guardian Life Ins. Co. of America*, . . . 62 A.3d 396 ([Pa. Super.] 2013. . .. In any event, [] Hamrock waived any claim he could have to a jury trial on the issue because he did not raise it until he filed a motion for post-trial relief. Therefore, [the trial court's] determination that [] Hamrock acted illegally, oppressively and fraudulently was correct.

Trial Court Opinion, 7/5/22, at 12-13 (footnote and some citations omitted).

We discern no abuse of discretion by the trial court in determining that Hamrock acted illegally, oppressively, and fraudulently such that the

appointment of a custodian was appropriate pursuant to section 1767(a)(2).

Hamrock cites no authority for the proposition that a jury must decide whether a director has acted illegally, oppressively, or fraudulently before the trial court may appoint a custodian pursuant to section 1767(a)(2). **See** Pa.R.A.P. 2119(a) (providing that issues raised on appeal shall be supported "by such discussion and citation of authorities as are deemed pertinent"). Moreover, a cursory review of the statutory language reflects that no factual finding by a jury is required before the trial court may appoint a custodian. Indeed, the statute provides that "**the court may appoint** one or more persons to be custodians of and for any business corporation **when it is made to appear that**: . . . the directors . . . of the corporation have acted illegally, oppressively or fraudulently toward one or more holders or owners . . .." 15 Pa.C.S.A. § 1767(a)(2) (emphasis added). The language, "**when it is made to appear that**," provides the trial court with the authority to appoint a custodian when it appears to the court that the evidence reflects that a director has acted illegally, oppressively, or fraudulently. The statute does not involve a jury in this assessment.

Here, the trial court concluded that the evidence of record met this threshold, noting:

> The circumstantial evidence includes [] Hamrock admitting he had the deed in his possession from the date he alleges he first signed it until he recorded it nineteen years later. **See** [N.]T[., 9/17-22/21, at] 389. [] Hamrock was also in possession of the source documents that were cut and pasted into the deed. [] Hamrock admitted the signatures on the deed are

- 28 -

identical to the signatures on the source documents. ***See*** [***id***., at] 391-[]93. [] Hamrock also had an obvious motive to forge the deed as he was able to use it to obtain $545,000. This is highlighted by the recording of the deed occurring shortly after he received solicitations from MDS [] and entered into an agreement with MDS []. ***See*** [***id***. at] 389-[]90.

Trial Court Opinion, 7/5/22, at 13 n.1.

We discern no abuse of discretion by the trial court in reaching its determination that, based on the evidence presented at trial, it appeared that Hamrock acted illegally, oppressively, and fraudulently toward Bayles. Accordingly, Hamrock's final issue merits no relief.

We next address Bayles's issues. In his first issue, Bayles contends that the trial court erred in entering its verdict that he owed Hamrock/JOM $14,661.97 in damages related to the three JOM properties sold by Hamrock in 2017 and 2019. Generally, our review of damage awards is narrow:

> In reviewing the award of damages, the appellate courts should give deference to the decisions of the trier of fact who is usually in a superior position to appraise and weigh the evidence. If the verdict bears a reasonable resemblance to the damages proven, we will not upset it merely because we might have awarded different damages.

***McManamon v. Washko***, 906 A.2d 1259, 1285 (Pa. Super. 2006) (citations omitted).

Bayles acknowledges that the damage award of $14,661.97 represents 40 percent of the $36,654.92 that Hamrock paid in delinquent real estate taxes to facilitate the sale of the three JOM properties. However, Bayles argues that Hamrock never disclosed those sales to Bayles, and Bayles's

signature was absent from the deeds because he was not involved in those transactions. Bayles claims that he cannot be liable for breach of fiduciary duty in relation to those transactions because his ignorance prevented him from causing damages for the closing costs related to those transactions (*i.e.*, payment of unpaid property taxes).

The trial court considered Bayles's first issue and determined that it lacked merit. The court reasoned:

> . . . Bayles contends there was no basis for concluding that he caused $14,661.97 in damages to [JOM]. [] Bayles is mistaken since there was more than sufficient evidence for the jury's verdict that [] Bayles breached "his fiduciary duty causing damages to . . . [JOM]." Jury Verdict, Question 7. [] Hamrock alleged [] Bayles breached his fiduciary duty to [JOM] because he did not provide funding needed to pay delinquent property taxes when three parcels sold in 2017 and 2019. Since [] Bayles acknowledged the "practice" of [JOM] was not to pay property taxes on pieces of property until they were sold ([**see** N.]T[., 9/17-22/21, at] 259 and 362), this practice was one basis for the jury finding [Bayles's] lack of any contribution towards the delinquent taxes upon the sale of the three parcels was a breach of fiduciary duty that caused damage to [JOM].
>
> [] Bayles also argues he cannot be liable for breach of fiduciary duty and cannot have caused damages to [JOM] because [] Hamrock did not involve [] Bayles in the transactions. However, the jury may have attributed [] Bayles'[s] non[-]involvement in the transactions to him breaching his fiduciary duty by not keeping in close enough contact with [] Hamrock. **See** [**id**. at] 541. It would be inappropriate for [] Bayles to accept the benefit of his part ownership of [JOM] to receive a portion of the natural gas revenues but then avoid any responsibility for part of [JOM's] expenses. Accordingly, there was a basis for concluding that [] Bayles breached his fiduciary duty causing $14,661.97 in damages to [JOM].

Trial Court Opinion, 7/5/22, at 14-15 (some citations omitted).

We discern no error or abuse of discern by the trial court in determining that Bayles owed Hamrock/JOM 40 percent of the amounts paid by Hamrock for delinquent taxes on the three JOM properties he sold in 2017 and 2019. The jury specifically found that Bayles breached his fiduciary duty to Hamrock and/or JOM. **See** Jury Verdict, 9/23/21, at 2. Given his 40 percent ownership interest in JOM, Bayles was responsible for 40 percent of JOM's debts. Thus, we discern no error or abuse of discern by the trial court in concluding that Bayles owed Hamrock/JOM $14,661.97 in damages for delinquent taxes owed on JOM's properties. Accordingly, Bayles's first issue merits no relief.

In his second issue, Bayles contends that the trial court erred in failing to set aside the jury's verdict insofar as it assessed no punitive damages against Hamrock. Our standard of review in assessing an award of punitive damages is well-settled.

> Punitive damages will lie only in cases of outrageous behavior, where defendant's egregious conduct shows either an evil motive or reckless indifference to the rights of others. Punitive damages are appropriate when an individual's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton, or reckless conduct.

**Pestco, Inc. v. Associated Prods., Inc.**, 880 A.2d 700, 709 (Pa. Super. 2005) (citation omitted). The determination of whether a person's actions rise to the level of outrageous conduct is within the sound discretion of the fact-finder and will not be disturbed by an appellate court so long as that discretion has not been abused. **See J.J. Deluca Co. v. Toll Naval Assocs.**, 56 A.3d 402, 415-16 (Pa. Super. 2021). In assessing punitive damages, the

- 31 -

trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause, and the wealth of the defendant. *See Vance v. 46 & 2, Inc.*, 920 A.2d 202, 206 (Pa. Super. 2007) (quoting RESTATEMENT (SECOND) OF TORTS § 908(2) (1979)). However, the wealth of the defendant is a proper consideration in the jury's determination of the *amount* of punitive damages to award, not in the jury's determination of whether or not to impose punitive damages in the first place. *Id*. Further, "[i]t should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419, (2003) (citation omitted).

Bayles asserts that the jury found that Hamrock's actions were outrageous. On this basis, Bayles surmises that "Hamrock's behavior reflected an evil motive or reckless indifference to the rights of others, specifically, . . . Bayles." Bayles's Brief at 32. According to Bayles, "[e]vidence of such conduct can be found in the forgery of the 1992 oil and gas deed, the recording of the forged deed with the Recorder of Deeds, the use of the deed to lease the rights to EQT[,] and the use of the deed to sell the rights to Divot and Cavallo." *Id*. Bayles claims that Hamrock's repeated forgeries and deception in this case warranted an award of punitive damages to punish and deter

future detrimental and illegal conduct. Bayles argues that the jury's failure to award punitive damages is so contrary to the evidence as to shock one's sense of justice.

The trial court considered Bayles's second issue and determined that it lacked merit. The court reasoned:

> This argument is premised on the jury being required to award some amount of punitive damages since it found [] Hamrock's conduct outrageous. [] Bayles cannot cite any legal authority that mandates an award of some amount of punitive damages when there is a finding of outrageous conduct. Indeed, in accordance with Pennsylvania Standard Suggested Jury Instruction (Civil) 8.00, [the trial court] instead instructed the jury it may award punitive damages if it finds outrageous conduct. The jury could have decided the award of compensatory damages would sufficiently punish [] Hamrock. The jury also could have been unable to determine what amount would punish him due to the lack of evidence of his wealth. . . . Therefore, [the trial court's] decision not to set aside the award of $0 for punitive damages is correct.

Trial Court Opinion, 7/5/22, at 15.

We discern no abuse of discretion by the trial court in failing to set aside the jury's verdict that no punitive damages should be assessed against Hamrock. As explained above, this Court must presume that Bayles has been made whole for his injuries by compensatory damages. *See Campbell*, 538 U.S. at 419. The determination of whether Hamrock's conduct warranted an award of punitive damages fell within the sound discretion of the jury, and this Court may not disturb that decision absent an abuse of that discretion. *See J.J. Deluca Co.*, 56 A.3d at 415-16. Based on the record before us, we cannot conclude that the jury abused its discretion in assessing no punitive

damages against Hamrock. Therefore, Bayles's claim that the trial court should have set aside the jury's determination warrants no relief.

In his final issue, Bayles contends that the trial court erred in relying on the verdict slip in awarding him only 40 percent of the compensatory damages awarded to JOM. Our standard of review of a trial court's award of damages is narrow:

> In reviewing the award of damages, the appellate courts should give deference to the decisions of the trier of fact who is usually in a superior position to appraise and weigh the evidence. If the verdict bears a reasonable resemblance to the damages proven, we will not upset it merely because we might have awarded different damages.

**Witherspoon v. McDowell-Wright**, 241 A.3d 1182, 1187 (Pa. Super. 2020) (citation omitted).

Bayles argues that the verdict slip was ambiguous, incomplete, and should have been regarded by the trial court as merely advisory. Bayles points out that the trial court determined that Hamrock was a serial forger, and Hamrock's only evidence of his purported 60 percent ownership percentage was the undated and unwitnessed stock certificates, which were under his exclusive control and in his personal possession, and on which he wrote his own name on the reverse of the certificates. Bayles asserts that JOM's tax records reflect that there was a 50/50 ownership split for seventeen years.[3]

_____

[3] Bayles additionally argues that the determination of the ownership of JOM, as well as the dissolution and partition of the corporation, were equitable
*(Footnote Continued Next Page)*

The trial court considered Bayles's final issue and determined that it lacked merit. The court reasoned:

> Question 2 in the verdict form simply asks does [] Bayles own 50% of the shares of [JOM's] stock. Since [] Bayles took the position he owned 50% and [] Hamrock took the position [] Bayles owned 40% of the stock, the jury's ["]no["] answer was its finding that [Bayles] owned 40%. [**See** Jury Verdict, 9/23/21, at 1.] There is no ambiguity. In any event, after the jury verdict was read in open court[,] Bayles'[s] counsel agreed with the jury's 40% stock ownership verdict. **See** [N.]T[., 9/17-22/21, at] 578-[]79. Therefore, [the trial court] was correct in utilizing 40% in calculating Bayles'[s] compensatory damages.

Trial Court Opinion, 7/5/22, at 15-16.

We discern no abuse of discretion by the trial court in relying on the jury's factual finding that Bayles did not own 50 percent of JOM. The jury was tasked with appraising and weighing the evidence and testimony to determine whether, as Bayles claimed, he and Hamrock each owned 50 percent of JOM, or whether, as Hamrock claimed, he owned 60 percent of JOM and Bayles owned 40 percent of JOM. By indicating on the verdict slip that Bayles did not own 50 percent of JOM, the jury implicitly expressed its factual finding that the parties agreed to change the ownership of JOM to a 60/40 split in Hamrock's favor. As an appellate court, we must defer to the jury's finding in this regard, as the finder of fact is usually in a superior position to appraise

matters for the trial court—and not the jury—to decide. However, this issue was not raised in Bayle's concise statement. **See** Pa.R.A.P. 1925(b)(4)(vii) (providing that issues not included in the concise statement are waived). Thus, as Bayles failed to preserve the issue for our review, we may not address it.

and weigh the evidence. *See Witherspoon*, 241 A.3d at 1187. Moreover, as the portion of damages awarded to Bayles (*i.e.*, 40 percent) bears a reasonable resemblance to the compensatory damages sustained by JOM as proven at trial, we will not upset the verdict merely because we might have awarded different damages. *Id*. Accordingly, Bayles's final issue merits no relief.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/18/2023